**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION**

| | |
|---|---|
| **IN RE:** | |
| **UNIVERSITY DIRECTORIES, LLC** | **CASE NO. 14 - 81184** |
| **PRINT SHOP MANAGEMENT, LLC** | **CASE NO. 14 - 81180** |
| **VILCOM, LLC** | **CASE NO. 14 - 81177** |
| **VILCOM INTERACTIVE MEDIA, LLC** | **CASE NO. 14 - 81181** |
| **VILCOM PROPERTIES, LLC** | **CASE NO. 14 - 81179** |
| **VILCOM REAL ESTATE DEVELOPMENT (VRD), LLC** | **CASE NO. 14 - 81182** |
| **DEBTORS.** | **CHAPTER 11** |
| **Motion (1) to Approve Private Sale of Real Property at 15 Seaside Sparrow Road, Hilton Head, South Carolina and (2) Transfer Liens to Proceeds** | |

NOW COME University Directories, LLC ("UD"), Print Shop Management, LLC ("Print Shop"), Vilcom, LLC ("Vilcom"), Vilcom Interactive Media, LLC("VIM"), Vilcom Properties, LLC ("VP") and Vilcom Real Estate Development (VRD), LLC ("VRD," and collectively, the "Debtors"), pursuant to § 363 of the Bankruptcy Code, Bankruptcy Rules 6004 and 9014, and hereby move the Court for entry of an Order (i) approving the private sale of the residential real property located at 15 Seaside Sparrow Road, Hilton Head Island, South Carolina, including payment at closing of ordinary closing costs, brokers' fees and expenses, and undisputed liens, and (ii) transferring disputed liens to the remaining proceeds of sale, and in support thereof respectfully represent as follows:

1.      On October 24, 2014 (the "Petition Date"), the Debtors filed voluntary petitions seeking relief under Chapter 11 of the Bankruptcy Code and Orders for relief were entered in each case. The Debtors continue in possession of their respective assets and operate their respective businesses as a debtors-in-possession.

1

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, and this matter is a core proceeding under 28 U.S.C. §157(b)(2). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

3. VRD owns residential real properties located at (i) 740 Gimghoul Road, Chapel Hill, North Carolina ("Gimghoul") and (ii) 15 Seaside Sparrow Road, Hilton Head Island, South Carolina ("HHI"). Each of the properties is or was occupied by James A. Heavner.

4. The cases involve affiliated Debtors and the primary secured creditors in each case are Wells Fargo Bank, N.A. ("Wells Fargo") and UDX, LLC, as successor in interest to Harrington Bank, FSB ("UDX").

    a. Wells Fargo holds three (3) separate loans. Two of the loans are secured solely by a first and a second lien on HHI, which is presently titled in the name of VRD. The third loan is secured by a third lien on HHI and a second lien on Gimghoul (also titled in the name of VRD), with UD as the borrower and VRD as a guarantor.

    b. UDX is the holder of several loans which were initially made by Harrington Bank. Bank of North Carolina acquired Harrington Bank and shortly thereafter sold these loans directly or through a related party to UDX. The UDX loans are (i) cross-defaulted and cross-collateralized, (ii) the obligations of most but not all of the Debtors, and (iii) secured by most but not all of the Debtors' assets, including HHI and Gimghoul.

5. None of the loans held by Wells Fargo are disputed as to the extent or validity of the liens or the amounts outstanding.

6. As set forth below, the loans held by UDX are the subject of bona fide dispute.

7. Other than the foregoing liens, the Debtor is not aware of any other lien or encumbrances attached to HHI.

**Proposed Sale**

8. HHI was originally titled in the name of Mr. Heavner, who listed the property for sale and after a fair and reasonable period of marketing, accepted an offer to sell the property to Andrea Tarbox and David Gransee or their designee (the "Purchasers") under the terms and conditions set forth in the Contract of Sale attached hereto as Exhibit A (the "Contract").

9. The Contract provides for a purchase price of $5,225,000 and anticipates a closing on or before November 15, 2014. The parties had scheduled the closing to occur on October 30, 2014, but cannot proceed absent approval by this Court. The purchase price is full, fair and

2

adequate consideration for the property, and the Purchaser is ready, willing and able to close the transaction.

10.     The Debtors seek authority to sell HHI to Andrea Tarbox and David Gransee or their designee, free and clear of all claims, liens, encumbrances or interests, pursuant to Section 363(f) of the Bankruptcy Code. If the closing date occurred on October 30, 2014,[1] the sale proceeds would be applied, disbursed or held subject to transferred liens as follows:

      a.      Brokers' commission of $313,500.00, six percent of the sale price, payable to Charter One and Alliance Realty Group;

      b.      Other customary closing costs of $47,149.16;

      c.      Pro rata share of 2014 property taxes, $18,506.73;

      d.      Wells Fargo, 1st mortgage (not disputed), $763,393.19;

      e.      Wells Fargo, 2nd mortgage (not disputed), $1,501,527.53; and,

      f.      Wells Fargo, 3rd mortgage (not disputed), $1,753,530.13.

11.     All remaining net proceeds, estimated at approximately $827,397.27, are to be retained in the Debtor's account subject to the transferred lien asserted by UDX, pending further Order of this Court.

12.     Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in property purchased from a debtor notwithstanding that the sale conducted under Section 363(b) is later reversed or modified on appeal.  Any order approving the Sale Contract should find that the Purchaser is a good-faith purchaser entitled to the protections of Section 363(m).

13.     Rule 6004(h) provides that an order authorizing a sale of property is stayed until the expiration of 14 days after entry of the order, unless the Court orders otherwise. In order to avoid unnecessary expense or risk of not closing at all, any order approving the Sale Contract should provide that it is effective immediately.

**Transfer of Disputed Liens**

14.      Prior to filing the Chapter 11 petitions, UD had retained an investment banker and was in the process of selling its business as a going concern, negotiating with a number of potential purchasers. In conjunction with these negotiations, UD signed a "Letter Agreement" with Eli Global, LLC ("Eli Global"), pursuant to which UD agreed to provide confidential

---

[1] If closing is delayed beyond October 30, 2014, additional interest and possible late fees will be due on the mortgages, and the tax pro rations will be adjusted to the actual closing date.

information to Eli Global solely for the purpose of evaluating a potential purchase of UD, and Eli Global agreed to use such confidential information solely for such purposes and no other.

15.     The Letter Agreement provides that (i) UD, without limiting any other rights and remedies available to it, shall be entitled to equitable relief, including injunction, and that Eli Global will not oppose the granting of any such equitable relief, and (ii) should Eli Global violate the provisions of the Letter Agreement, it will pay all costs of UD in enforcing its rights.

16.     UD provided confidential information to Eli Global and the parties executed a Term Sheet dated September 10, 2014, and executed a second Term Sheet as revised September 30, 2014. Each Term Sheet indicated a purchase price of $1,750,000 for ownership of UD, free of any bank debt, and Eli Global was to provide a non-refundable deposit of $200,000 to its attorney.[2]

17.     Closing on the transaction was expected to occur on or before October 31, 2014, subject to completion of due diligence and final documentation. UD was working with its lender, Harrington Bank, and expected to satisfy the outstanding UD loans in full at closing from the purchase price.

18.     Eli Global also signed a Confidentiality Agreement with Bank of North Carolina ("BNC"), dated September 22, 2014, pursuant to which BNC agreed to provide confidential information regarding certain loans (the "Loans") to Eli Global for purposes of evaluating a possible sale of the debt to Eli Global. The Loans consisted of (i) four loans made to UD (the "UD Loans"), secured by the assets of UD and other Debtors, and (ii) one loan made to VRD (the "VRD Loan"), secured by Gimghoul.

19.     Harrington Bank was acquired by Bank of North Carolina, and BNC then (i) sold the UD Loans to UDX, and (ii) sold the VRD Loan to Southland National Insurance Corporation ("Southland"), an affiliate of Eli Global.[3]

20.     Having acquired all the Loans held by BNC through its affiliates, Eli Global suddenly abandoned the sale process with UD, and instead:

      a.     On October 15, 2014, UDX gave notice of default and of the acceleration of the indebtedness evidenced by the UD loans.

---

[2] Upon information and belief, no deposit was made by Eli Global as required by the Term Sheets.
[3] The VRD Loan was subsequently transferred by Southland to UDX.

4

b.      On October 15, 2014, UDX gave notice of the intended disposition of the collateral securing the UD Loans by private sale on or after October 25, 2014.

c.      On October 16, 2014, UDX gave a second notice of default under the UD Loans and demanded accountings and delivery of certain documents.

d.      On October 20, 2014, UDX gave a third notice of default under the UD Loans and demanded that the collateral be marshalled and delivered to UDX.

e.      On October 21, 2014, UDX gave notice that Southland had assigned the VRD Loan to UDX.

f.      On October 21, 2014, UDX gave notice of default and of the acceleration of the indebtedness evidenced by the VRD Loan.

21.     Eli Global, UDX and Southland, together with their managers, officers, agents and employees (collectively, the "UDX Defendants"), acted in concert and in violation of their legal and contractual obligations to the Debtors, in that:

a.       The UDX Defendants violated the terms and conditions of the Letter Agreement with UD.

b.      The UDX Defendants violated the terms and conditions of the Confidentiality Agreement with BNC.

c.      The UDX Defendants conspired and colluded in a manner designed to frustrate and impede UD in its efforts to sell UD or its assets.

d.      The UDX Defendants did not negotiate in good faith with UD, acted in a manner which constitutes unfair and deceptive trade practices, and acquired the UD Loans and the VRD Loan for the sole purpose of exercising undue pressure on the Debtors so as to acquire the UD assets for less than fair value.

22.     The Debtors intend to commence an adversary proceeding against the UDX Defendants seeking, among other relief, (i) injunctive relief and the recovery of UD's costs, including its reasonable attorneys' fees, as provided in the Letter Agreement, (ii) damages for violations of the Letter Agreement and the Confidentiality Agreement, (iii) actual damages, punitive damages and the recovery of UD's reasonable attorneys' fees for unfair and deceptive trade practices and fraud, (iv) equitable subordination of the liens and claims held by UDX, and (v) such other relief as may be warranted.

Wherefore, the Debtors respectfully pray the Court for entry of an Order, effective immediately:

1.      Finding that the Purchaser is a "good faith purchaser" entitled to the protections of Section 363(m), and authorizing the Debtors to sell, transfer and convey the Property to Andrea Tarbox and David Gransee or their designee in accordance with the terms and conditions of the Contract;

2.      Ordering that the stay otherwise imposed by Bankruptcy Rules 6004(h) be waived and that any order approving this Motion be effective and enforceable immediately upon entry;

3.      Transferring the liens, claims, encumbrances or interests of any creditor or other party in interest to the sale proceeds;

4.      Authorizing the Debtors to distribute the Sale Proceeds as set forth above, including the applicable broker's commission, ordinary closing costs, and payment in full of the three loans held by Wells Fargo;

5.      Authorizing the Debtors to retain the balance of the Sale Proceeds pending further Order of this Court; and

6.      Providing such other relief as the Court may deem necessary and proper.

Respectfully submitted on behalf of the Debtors, this the 24th day of October, 2014.

/s/ John A. Northen

**Counsel for the Debtors:**
John A. Northen, NCSB #6789
jan@nbfirm.com
Vicki L. Parrott, NCSB #25449
vlp@nbfirm.com
John Paul H. Cournoyer, NCSB #42224
jpc@nbfirm.com
Northen Blue, LLP
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone: 919-968-4441

6

**Exhibit A**

**Contract of Sale**

# CONTRACT OF SALE - OFFER AND ACCEPTANCE

*ANDREW TARBOX & DAVID GRANGER*
("Purchaser")

whose address is set forth in Page 6.

Hereby agrees to purchase from:

*JAMES A. HEAVNER*
("Seller")

whose address is set forth in Page 6

1. **PROPERTY DESCRIPTION.** Purchaser agrees to purchase, and Seller hereby agrees to sell all that lot or parcel of land, with all improvements thereon, and any interest appurtenant thereto, situated in South Carolina and being described as follows:

Legal: _5   Seaside Sparrow_

Mailing: _15   Seaside Sparrow_ (the "Property")

**THE ☐ BUYER ☐ SELLER IS LICENSED UNDER THE LAWS OF SOUTH CAROLINA AS A REAL ESTATE LICENSEE.**

2. **PURCHASE PRICE.** The total Purchase Price for the Property is $ ~~5,200,000~~ *5,225,000 9AH* to be paid by Purchaser as follows:

a. Earnest Money deposited herewith ("Deposit")  $ *75,000*
b. Additional Earnest Money Deposit to be paid by _____  $ 
c. A First Mortgage for at least ____ years at prevailing interest rates and terms  $ *3,000,000*
d. Additional Consideration _____  $ 
e. Balance in collected funds (e.g. wire transfer or cashier's check) at Closing  $ ~~1,125,000~~ *1,150,000 9AH*
   *WITH RESPECT TO THE PROPERTY*

3. **FINANCING CONTINGENCY.** If referred to in Paragraph 2 above, this Contract is subject to the Purchaser obtaining a ~~commitment~~ for the financing referenced above from a lender customarily making such loans in Beaufort County and the surrounding area. Purchaser shall use best efforts to obtain such a loan and shall supply the prospective lender(s) with ~~all requisite information~~. The timing of this financing contingency is as follows: *EVIDENCE OF SUCH EFFORTS UPON WRITTEN DEMAND BY SELLER*

a. Purchaser shall complete a loan application and must provide a prequalified letter from the lender within *N/A* business days.
b. Purchaser shall obtain a loan commitment within *N/A* business days ("Financing Contingency Period").
All time periods run from the effective date of this Contract as set forth on Page 6. If Purchaser's bona fide loan application does not result in a commitment within the above time frame, Purchaser shall have the affirmative obligation of providing written notice to Seller or Seller's agent that the financing contingency has not been satisfied and that the Purchaser has elected to terminate this Contract for failure to obtain financing. Upon receipt of notice and execution of any required release forms, the Listing Agency (or other Escrow Agent holding the funds) shall return to the Purchaser any sums heretofore paid as earnest money, and upon such payment, this Contract shall have no force and effect and neither party hereto shall have any rights against the other hereunder. Notwithstanding the right to cure time period contained in Paragraph 9, the parties acknowledge and agree that time is of the essence with respect to all time periods contained within this Paragraph 3. No right to cure shall apply to the periods contained in this Paragraph 3. If any requisite action called for by this Paragraph is not taken within the time periods contained in this Paragraph, the financing contingency shall be deemed waived. Purchaser acknowledges that this financing contingency is limited in time.

*OR IF ANY TIME AFTER A LOAN COMMITMENT IS ACCEPTED BUT PRIOR TO CLOSING THE LENDER WITH DRAWS FINANCING DUE*

Initials: Purchaser _____ ✗ D H Date *9/2/14*   Seller _____ Date *9/2/2014*

HHAAOR – version 01/2013

- Page 1 of 6 -

This contract is for use by Robert Clarkson. Use by any other party is illegal and voids the contract. **Instanet forms**

Case 14-81184    Doc 6    Filed 10/24/14    Page 8 of 24

4. **FURNISHINGS, SYSTEMS.** The property to be sold hereunder includes all heating and air conditioning systems, all fixtures attached to the Property and all electric and plumbing systems and other equipment, and shall additionally include without limitation the following:

[√] Refrigerator  [√] Freezer  [ ] Washer  [√] Dryer  [√] Stove/Oven  [√] Microwave  [√] Cook Top & Attachments
[√] Dishwasher  [√] Ceiling Fans  [√] Irrigation System  [√] Pool Equipment  [ ] Septic System  [ ] Furnished
[√] Window Treatments  [√] Trash Compactor  [√] Bathroom Mirrors  [x] Other

*SOUND SYSTEM - FLAT SCREEN TV's - PORCH SWINGS*

*MBR*
*apt*

If sold furnished, all furniture & furnishings are included unless specifically excepted by an attached list of excluded items. All appliances, heating, air conditioning, electric and plumbing systems, fireplace/chimney, pool and spa shall be in good working order; their physical condition shall be subject to reasonable wear and tear which does not adversely affect the normal and regular use thereof. Further, the structure shall be reasonably sound, and the roof free of leaks at time of Closing.

5. **WOOD INFESTATION REPORT.** Seller agrees to provide at its expense at Closing an "Official South Carolina Wood Infestation Report (CL-100)" in which no infestation or damage is reported or if there is damage observed, that it is insufficient to recommend repair. Such report must be dated within 30 days of the Closing and shall be provided to Purchaser's and Seller's closing attorney not less than fourteen (14) days prior to Closing. If infestation by termites or other wood destroying organisms, or damage sufficient to recommend repair, is observed, Seller shall cause same to be repaired prior to Closing. If repairs are not completed by the date of Closing, then Purchaser shall have the option of (i) delaying Closing until the repairs are completed, or (ii) Seller shall agree to permit Purchaser's closing attorney to escrow funds from the sales proceeds at Closing in an amount equal to the costs of such repair. If the Property has not been previously occupied, Seller shall certify that the dwelling has been treated by soil poisoning for the prevention of termites and other wood destroying organisms and shall provide the Purchaser, at Closing, a written certification from a licensed pest control operator.

6. **OTHER TERMS.** Other terms and conditions of this Contract are:
*Repairs requested by MM*

7. **DATE OF CLOSING.** The closing of this Contract shall take place on or before _Nov 15, 2014_ (the "Closing") at the office of Purchaser's attorney or other offices stipulated by Purchaser. Unless otherwise provided herein, Seller shall deliver possession of, and keys to, the Property, free of debris and in a broom clean condition, to Purchaser at Closing. Seller and Purchaser authorize their respective attorneys and the settlement agent to furnish to Listing Broker and Selling Broker copies of the final HUD-1 settlement statement for the transaction.

8. **CONDITION OF PROPERTY.** Subject to the terms set forth in Paragraph 4, Paragraph 5 or Paragraph 10, Purchaser is purchasing the Property in its present condition "as is," except for:

*INSPECTION ADDENDUM ATTACHED*

The parties understand that "as is" means that the property is being conveyed in the condition in which it is presently found subject to the aforementioned paragraphs. Purchaser, at Purchaser's expense shall be permitted to have inspection(s) of the Property performed by qualified and licensed parties to insure that the Property complies with the requirements of Paragraph 4, as well as to address any environmental or other concerns of Purchaser. It is recommended that Purchaser obtain an inspection(s). At Closing, the Property shall be delivered in the same condition as existing at the time of this Contract except for those required repairs or other agreed upon improvements. Purchaser, or Purchaser's representative shall be permitted to conduct a walk through and/or have their inspector re-inspect the items the Seller repaired prior to closing to insure the completion of same.

Initials: Purchaser _____ _OHG_ Date _9/2/14_  Seller _____ Date _9/2/2014_

BHAAOR – version 01/2013

- Page 2 of 6 -

This contract is for use by Robert Clarkson. Use by any other party is illegal and voids the contract. **Instanet forms**

If repairs are not completed by the date of Closing, then Purchaser shall have the option of (i) delaying Closing until the repairs are completed, or (ii) Seller shall agree to permit Purchaser's closing attorney to escrow the necessary funds from the Seller's proceeds at Closing.

9.    **DEPOSITS/DEFAULT.** All money deposited by Purchaser hereunder shall be applied toward the Purchase Price at Closing. Upon the failure of either party to comply with the terms hereof within the stipulated time, and after notice of said default is provided per the provisions of Paragraph 15 below, with a ten (10) business day right to cure, it is understood and agreed by and between the parties hereto that either party may proceed with all rights and remedies at law or in equity against the defaulting party. ~~In the case of a Purchaser default, the Seller may elect, in lieu of all other remedies, the~~ ~~forfeiture of the Deposit as liquidated and agreed upon damages.~~ The parties agree that the Escrow Agent shall not disburse the Deposit until Seller and Purchaser have executed a release form authorizing the disbursement or until a court of competent jurisdiction has directed a disbursement. In the event of any litigation commenced because of a default hereunder, the prevailing parties in such litigation shall be entitled to recover attorney fees and court costs from the non-prevailing parties. *NEITHER PARTY SHALL BE responsible, liable for incidental consequential AND/OR INCIDENTAL DAMAGES AND/OR DAMAGES resulting from het DEFECTION in ANY EXTENT* The parties hereto hereby acknowledge that the Deposit shall be held in escrow by the Escrow Agent, *IN EXCESS* _____. Additionally, the Purchaser authorizes the Escrow Agent to transfer the Deposit to the settlement agent in advance of Closing. The Escrow Agent shall not be required to institute or maintain any litigation unless indemnified to its satisfaction for its attorney fees, cost disbursements, and all other expenses and liabilities to which it may, in its judgment, be subjected in connection with this action. The Seller and Purchaser shall at all times indemnify the Escrow Agent against all actions, proceedings, claims and demands arising out of this transaction relating to the holding of the Deposit. In the event of a dispute between the Seller and Purchaser which cannot be resolved, the Escrow Agent shall have the option of depositing the Deposit into the Clerk of Court's Office, pending resolution of the disposition of said funds, and Escrow Agent shall bear no further responsibility for said Deposit.

10.    **RISK OF LOSS AND DAMAGE.** In case the Property is wholly or substantially damaged by fire, storm or other casualty, Purchaser may elect, within twenty (20) business days after receiving written notice thereof, to proceed hereunder with a mutually agreed adjustment in the terms of this Contract, or terminate this Contract and receive back all money deposited hereunder. **In the event the Property is damaged by the Purchaser, or by any person upon the Property on the Purchaser's behalf (i.e. , inspector), such damage shall be repaired at Purchaser's expense.**

11.    **PRORATIONS; CLOSING COSTS; ASSESSMENTS.** All expenses of ownership (and rents, if any) shall be prorated to the date of Closing. Purchaser agrees to purchase from Seller the fuel, if any, situated in any tank on the Property at the prevailing rate with the cost of measurement thereof being paid by Seller. Purchaser is responsible for any Town, City or County Transfer fee, and for the County recording fees for the deed and any loan documents. Additionally, Purchaser shall pay the cost of securing a title examination, title insurance, and a survey (except any survey required by the South Carolina Coastal Tidelands & Wetlands Act, which is the responsibility of Seller). Unless otherwise agreed to in this Contract, Purchaser shall assume outstanding assessments or fees, if any, to cover the costs of water and/or sewer infrastructure. Seller shall be responsible for the South Carolina deed-recording fee required by SC Code §12-24-10, Each party shall pay its own attorney's fees. Unless otherwise agreed to in this Contract, Seller shall be obligated to pay any regime or property owner association special assessment approved by its Board of Directors or similar body prior to Closing; provided, however, if such special assessment is levied and/or billed in installments over more than one year, the Seller shall be obligated to pay the installment for the full current calendar year of Closing only and the Purchaser shall assume the installments in future calendar years. Notwithstanding the foregoing, a special assessment to cover insurance premiums, whenever assessed prior to closing, shall be pro-rated based on ownership over the period covered by the premium.

The Property ☐ does ☑ does not have a homeowners' association transfer fee or community enhancement fee, or initiation fee due upon the transfer of the Property. If applicable, the fee is based on a percentage of the Purchase Price or a flat fee and shall be paid by the ☐ Seller ☐ Purchaser. The foregoing is not intended to include processing or administrative fees charged by associations or management agents, where said processing or administrative fees are to be paid by Seller.

12.    **BROKER DISCLAIMER.** Seller and Purchaser agree that the Selling Agency & Listing Agency are acting only as real estate agents in this transaction and as such have no responsibility for and make no oral or written representations concerning the condition of the premises, terms of the sale or title to the Property, nor are they responsible or accountable for payment of the Purchase Price or for any other funds, except any portion of the Deposit actually received. Neither Agency guarantees payment of any check received as deposit money hereunder. Seller and Purchaser acknowledge that the Agencies: (1) give no guaranty or warranty of any kind, express or implied, as to the physical condition of the Property; (2) give no

Initials: Purchaser _____ _____ Date 9/2/2014 Seller _____ Date 9/2/2014

HHAAOR – version 01/2013

This contract is for use by Robert Clarkson. Use by any other party is illegal and voids the contract. *Instant forms*

warranty, express or implied, as to the merchantability or fitness for a particular purpose regarding the Property; (3) give no guaranty or warranty concerning any inspection or report concerning the Property or the accuracy of any published square footage of the Property; (4) give no guaranties or warranties regarding any rental income or other economic benefit of the Property to Purchaser; (5) give no guaranties or warranties regarding any regime or property owner association special assessments which may apply to the Property; and (6) are not responsible for the accuracy of any information contained in the Seller's Property Condition Disclosure Statement.

13.     **TITLE.** Seller shall convey marketable title to the Property to Purchaser in fee simple by proper deed in recordable form with covenants of general warranty, subject to normal utility easements, applicable restrictive covenants, governmental regulations and assessments. If an owner's title binder can be issued by an ALTA title insurance company at standard rates with standard exceptions for the Beaufort County and surrounding area, title shall be deemed to be marketable. Purchaser acknowledges that Selling Agency has recommended that an attorney examine the title to the Property on Purchaser's behalf. If the Property is a condominium or subject to covenants or restrictions, Purchaser shall have the obligation to verify all regime and property owner regular or special assessments.

14.     **NON-RESIDENT TAX WITHHOLDING.** Seller shall comply with the provisions of South Carolina Code §12-8-580 and U.S. Internal Revenue Code §1445 (as amended) regarding withholding requirements for sellers who are not South Carolina or U.S. residents.

15.     **NOTICE.** With the exception of Paragraph 3, notice required or permitted to be given under this Contract ("Notice") must comply with the requirements of this Paragraph 15. Any such Notice shall be in writing and shall be deemed to have been given if delivered by hand, facsimile, sent by recognized overnight courier service (such as UPS or Federal Express), or mailed by certified or registered mail, return receipt requested, with postage prepaid and addressed:

    a.    to the party at the address set forth on the signature Page 6 herein; or

    b.    to the legal counsel for a party who has been retained by the party for the transaction contemplated by this Contract.

16.     **MEGAN'S LAW.** The Purchaser and Seller agree that the Listing and Selling Broker and all affiliated agents are not responsible for obtaining or disclosing any information contained in the South Carolina Sex Offender Registry. The Purchaser and Seller agree that no course of action may be brought against the Listing and Selling Broker and all affiliated agents for failure to obtain or disclose any information contained in the South Carolina Sex Offender Registry. The Purchaser and Seller agree that the Purchaser and Seller have the sole responsibility to obtain any such information. The Purchaser and Seller understand that Sex Offender Registry information may be obtained from the local sheriff's department or other appropriate law enforcement officials.

17.     **STATUTORY AND OTHER ADDENDA.**

    a.    In the event the Property is affected by the provisions of the South Carolina Coastal Tidelands & Wetlands Act (Paragraph 48-39-10, et. seq., South Carolina Code of Laws), an Addendum will be attached to this Agreement incorporating the required disclosures at Seller's expense.

    b.    The Purchaser has ☒ has not ☐ reviewed a South Carolina Property Condition Disclosure Statement.

    c.    The South Carolina Vacation Rental Act does ☒ does not ☐ apply to this transaction.

    d.    This Contract applies ☒ does not ☐ apply to a residence built prior to 1978. If such residence was built prior to 1978, this Contract is subject to the Lead Based Paint Contingency Addendum and the Lead Based Paint Disclosure, both of which are attached hereto and incorporated herein.

    e.    Flood Insurance is required ☒ is not ☐ required for any federally insured mortgage on the Property.

    f.    An Inspection Report Addendum is ☒ is not ☐ attached to this Contract and incorporated herein by reference.

    g.    A list of excluded items per Paragraph 4 is ☐ is not ☒ attached hereto and incorporated herein by reference

    h.    Also attached hereto and incorporated herein are the following Addenda:

Initials: Purchaser _____ _DHC_ Date _9/2/17_ Seller _____ Date _9/2/2014_

HHAAOR – version 01/2013

- Page 4 of 6 -

This contract is for use by Robert Clarkson. Use by any other party is illegal and voids the contract. *Instanet forms*

**IN WITNESS WHEREOF,** the undersigned parties have executed this Contract on the date set forth beneath their respective signatures. The last date of execution of this Contract by a party, or, if applicable, the last date that the Contract was initialed by a party shall be the **effective date** of the Contract for purposes of all time periods set forth herein. A signature or initial by either party must be dated to be binding upon the other party.

WITNESSES:

_____

_____

_____
Purchaser

_____
Purchaser

_____
Date

Purchaser's Address for Purposes of Notice:

_____

_____

_____

WITNESSES:

_____

_____
Seller

_____
Seller

_____
Date

Seller's Address for Purposes of Notice:

_____

_____

_____

Listing Agent: _____   Company: _____

LISTING AGENT IS ACTING ON BEHALF OF SELLER AS A (CHOOSE ONLY ONE)

☐ SELLER'S AGENT ☐ DUAL AGENT OR ☐ DESIGNATED AGENT

Selling Agent: _____   Company: _____

SELLING AGENT IS ACTING ON BEHALF OF PURCHASER AS A (CHOOSE ONLY ONE)

☐ BUYER'S AGENT ☐ SELLER'S AGENT ☐DUAL AGENT OR ☐ DESIGNATED AGENT

SELLING AGENT or TEAM MLS ID _____

(The foregoing form may be used only by members in good standing of the Hilton Head Area Association of REALTORS®.)

☐ This is the unmodified Hilton Head Area Association of REALTORS® recommended contract form.

☒ This form has been modified from that recommended by the Hilton Head Area Association of REALTORS®

HHAAOR – version 01/2013

This contract is for use by Robert Clarkson. Use by any other party is illegal and voids the contract. *instanet forms*

18. **MISCELLANEOUS.** The invalidity or unenforceability of any provision of this Contract shall not affect the other provisions hereof and this Contract shall be construed in all respects as if such invalid and unenforceable provision were omitted. This Contract may be executed in counterparts, each of which shall be deemed to be an original. The parties agree that any offer, counteroffer, and/or acceptance may be communicated by the use of facsimile (FAX) or other electronic media, e.g., e-mail, and that the signatures, initials, and handwritten or typewritten modifications to any of the foregoing shall be deemed to be valid and binding upon the parties as if the originals were present on the documents in the handwriting of each party. This Contract shall be governed and construed in accordance with the laws of the State of South Carolina. No failure of a party to exercise any power or right granted hereunder or to insist upon strict compliance with any obligation specified herein, and no practice at variance with the terms hereof, shall constitute a waiver of said power or right unless expressly authorized in writing by the affected party. If either party is a corporation, limited liability company, trust, or partnership, it shall provide evidence that: (i) the persons executing this Contract are authorized to act on behalf of the entity, and (ii) that the entity is validly and legally existing and in good standing and the undersigned individuals agree that the principals of the purchasing entity will personally endorse any financing described above if required by the lender. This Contract shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, devisees, personal representatives, successors and assigns. This Contract may not be assigned by Purchaser without Seller's written consent which consent shall not be unreasonably withheld. In the event of such approved assignment, the original Purchaser shall not be released from it obligations under this Contract, unless otherwise agreed. This Contract constitutes the entire agreement between the parties hereto and may be modified only in writing.

THIS IS A LEGALLY BINDING CONTRACT WHEN SIGNED. PURCHASER AND SELLER SHOULD SEEK LEGAL ASSISTANCE IF THE CONTENTS OF THIS CONTRACT ARE NOT UNDERSTOOD. PURCHASER AND SELLER ACKNOWLEDGE RECEIPT OF A COPY OF THIS CONTRACT.

BOTH BUYER AND SELLER ACKNOWLEDGE RECEIVING, READING, AND UNDERSTANDING THE SOUTH CAROLINA REAL ESTATE COMMISSION'S AGENCY DISCLOSURE BROCHURE.

\* *The seller understands the purchasers may assign their rights under this contract to a trust, limited liability co or other entity to purchase the property and seller consents to such assignment provided the original seller purchaser shall not be released from their obligations under this contract unless otherwise agreed.* JRT DWH

[remainder of page left blank intentionally – signature page to follow]

Initials: Purchaser _____ DWG Date 9/2/14     Seller _____ Date 9/2/2014

This contract is for use by Robert Clarkson. Use by any other party is illegal and voids the contract. **instanet forms**

## ADDENDUM TO CONTRACT OF SALE
### INSPECTION(S)

PROPERTY: _15 Sea Sine Shelter_

Purchaser may order inspection report(s) to be prepared by licensed inspectors at Purchaser's expense. With respect to Paragraph 4 of the Contract, the parties agree that the purpose of such inspection report is to determine that the Property complies with the requirements of said Paragraph 4.

> It is understood that this Property is a *resale* property, that it is *not new construction* and that normal wear and tear is to be expected. (For example: fogged windows, interior doors that do not lock or latch, rust, tree trimming, leaf accumulation on the roof, cracks in tile and countertops, and housekeeping items such as filters, light bulbs, painting and cleaning are considered normal wear and tear and are not subject to repair unless otherwise noted in the Contract.)

The Paragraph 4 inspection report and any additional inspection report requested by Purchaser pursuant to Paragraph 8 of the Contract must be completed within ___15___ business days of the full execution of the Contract. Seller or Seller's agent shall be provided with a copy of the inspection report, along with a statement from the Purchaser or Purchaser's representative as to any findings in the report(s) which Purchaser wants the Seller to repair/address. Seller shall respond to Purchaser's request for repairs within five (5) business days. In the event Purchaser does not submit a copy of the report and requested repairs within the allotted time period, then the Purchaser shall be deemed to have waived the right to request the Seller to make any repairs recommended.

Seller agrees to make all reasonable repairs recommended in the Paragraph 4 inspection report so as to comply with Paragraph 4 of the Contract. Purchaser and Seller agree that no repairs other than those related to Paragraph 4 of the Contract are required by this Inspection Addendum unless said repairs are expressly included in the Contract. In the event that Purchaser and Seller cannot agree upon any other repairs requested by Purchaser pursuant to any additional inspection of the Property per Paragraph 8 of the Contract, the Purchaser shall have the option of: (a) accepting the Property with the repairs, if any, that Seller is willing to pay for; or (b) terminating the Contract by written notice delivered to Seller within ~~five (5) business days~~ receipt of Seller's response.
                                                                                      _FIVE  BUSINESS DAYS_

In the event Seller is obligated, or has otherwise agreed, to make certain repairs and such repairs are not completed by the date of closing, then Seller shall agree to permit Purchaser's closing attorney to escrow the necessary funds from the Seller's proceeds at closing.

Notwithstanding the foregoing, nothing contained herein shall alter the Seller's responsibility to disclose any changes in the condition of the Property as required by South Carolina Code §27-50-60, or the contractual obligation in Paragraph 8 to convey the Property in the same condition as existing at the time of Contract. For example, should something occur to the Property after the inspection that renders the Property non-compliant with Paragraph 4 of the Contract, Seller shall remain responsible for same.

Seller's responsibility in connection with the condition of the Property shall cease at closing and the closing shall constitute Purchaser's acceptance of the Property unless provisions are otherwise made in writing.

SELLER: _/s/ N. Neumann_  Date _8/27/14_    PURCHASER: _/s/_  Date _8/25/14_

Seller _____  Date _____    Purchaser _/s/ David H. Sloan_  Date _8/25/14_

The foregoing Addendum to Contract is:

     [X] the unmodified version of the CDRS 3/28/08 contract form.

     [X] contains modifications to the CDRS 3/28/08 contract form.

_IN THE EVENT PURCHASER ELECTS TO TERMINATE THE CONTRACT ON ACCOUNT OF SUCH A FAILURE TO AGREE, THE PURCHASER SHALL BE ENTITLED TO RECEIVE BACK ALL MONIES DEPOSITED HEREUNDER_

HILTONHEAD-#298264-v11
CDRS-3/28/08

## BEACH PROTECTION ACT CONTINGENCY ADDENDUM DISCLOSURE

**THIS BEACH PROTECTION ACT CONTINGENCY ADDENDUM** ("Addendum") amends and is a part of the Contract of Sale – Offer and Acceptance ("Contract") between _JAMES A. HEAVNER_ ("Seller") and _ANDREA TARBOX_

\* _DAVID GRANSEE_ ("Purchaser").

1. <u>Beachfront Protection Act Survey</u>. Seller ✓ has ___ has not (check one) provided Purchaser with a copy of the Property's Beachfront Protection Act survey as required by and S.C. Code Sections 48-39-10 through 48-39-350, as amended ("Beach Protection Act").

2. <u>Beachfront Protection Act Contingency</u>. Purchaser shall have fifteen (15) days from the Contract Date to determine if the location of the baseline, the setback line, and the improvements on the Property as depicted on the Beachfront Protection Act Survey are acceptable to Purchaser in Purchaser's sole discretion. If Seller has not provided Purchaser with a copy of the Beachfront Protection Act Survey, the fifteen (15) day contingency date shall not start until the date Purchaser receives the Beachfront Protection Act Survey. If the Beachfront Protection Act Survey is unacceptable to Purchaser in Purchaser's discretion, then Purchaser may terminate the Contract in writing no later than three (3) days following the expiration of the fifteen (15) day contingency period. In such event, all Earnest Money Deposits shall be returned to Purchaser, and neither party shall have any further rights under the Contract.

Seller _____ Date 9/2/2014      Purchaser _____ Date 9/1/14

Seller _____ Date _____      Purchaser _____ Date 9/1/14

Case 14-81184   Doc 6   Filed 10/24/14   Page 15 of 24

## FLOOD INSURANCE CONTINGENCY ADDENDUM

THIS FLOOD INSURANCE CONTINGENCY ADDENDUM ("Addendum") amends and is a part of the Contract of Sale – Offer and Acceptance ("Contract") between ___JAMES A. HEANER___ ("Seller") and ___ANDREA TARBOX & DAVID GRANGER___ ("Purchaser").

1.     Elevation Certificate. Seller ✓ has ___ has not (check one) provided Purchaser with a copy of the Property's flood elevation certificate.

2.     Flood Insurance Premium Contingency. Purchaser shall have fifteen (15) days from the Contract Date to determine if Purchaser will be able to procure flood insurance under the Federal Emergency Management Agency's National Flood Insurance Program ("NFIP") at a premium acceptable to Purchaser in Purchaser's sole discretion. If Seller has not provided Purchaser with a copy of the flood elevation certificate, the fifteen (15) day contingency date shall not start until the date Purchaser receives the flood elevation certificate. If the NFIP flood insurance premium is unacceptable to Purchaser in Purchaser's discretion, then Purchaser may terminate the Contract in writing no later than three (3) days following the expiration of the fifteen (15) day contingency period. In such event, all Earnest Money Deposits shall be returned to Purchaser, and neither party shall have any further rights under the Contract.

Seller _____ Date 9/2/2014

Seller _____ Date _____

Purchaser _____ Date 9/1/17

Purchaser _David H. Granger_ Date 9/1/14

HILTONHEAD 865598v1



**STATE OF SOUTH CAROLINA**
**RESIDENTIAL PROPERTY CONDITION**
**DISCLOSURE STATEMENT**



The South Carolina Code of Laws (Title 27, Chapter 50, Article 1) requires that an owner of residential real property (single family dwelling unit or a single transaction involving transfer of four dwelling units or less) shall provide to a purchaser this completed and signed disclosure statement prior to forming a real estate contract. This disclosure must be provided in connection with any sale, exchange, installment land sale, and lease with an option to purchase contract. This disclosure statement is not required in connection with transactions listed and exempted by South Carolina Code Section § 27-50-30.

Owners should answer the questions fully, honestly, and appropriately by attaching documents, checking a box for each check box question, and writing in the blanks on this disclosure statement.

If a question is answered "yes" or asks for a description, then owner must explain or describe the issue or attach a descriptive report from an engineer, contractor, pest control operator, expert, or public agency. If owner attaches a report, owner shall not be liable for inaccurate or incomplete information in the report unless owner was grossly negligent in obtaining or transmitting the information. If owner fails to check "yes" or make a disclosure and owner knows there is a problem, owner may be liable for making an intentional or negligent misrepresentation and may owe the purchaser actual damages, court costs, and attorney fees. If a question is answered "no" for any question, the owner is stating that owner has no actual knowledge of any problem.

If a question is answered "no representation" for any question, owner is stating that owner is making no representation regarding the conditions or characteristics of the property, but owner still may have a duty to disclose information that is known or should have been known.

If a question is answered and subsequently new information is obtained or something changes to render the owner's answer incorrect, inaccurate, or misleading (example: roof begins to leak), owner must promptly correct the disclosure. In some situations, the owner may notify the purchaser of the correction. In some situations, the owner may correct or repair the issue.

If owner is assisted in the sale of property by a real estate licensee, owner remains solely responsible for completing and delivering this disclosure statement to the purchaser. The real estate licensee must disclose material facts about the property if the real estate licensee knows or reasonably should have known about the issue, regardless of owner responses on this disclosure. Owner is solely responsible to complete this disclosure as truthfully and fully as possible. Owner and purchasers are solely responsible to consult with their attorneys regarding any disclosure issues. By signing below, owners acknowledge their duties and that failure to disclose known material information about the property may result in owner liability.

Owner must provide the completed disclosure statement to the purchaser prior to the time the owner and purchaser sign a real estate contract unless the real estate contract states otherwise. Owner should provide a signed copy to the purchaser and keep a copy signed by the purchaser.

A real estate contract, not this disclosure, controls what property transfers from owner to purchaser.

Property Address (including unit # or identifier) _15 Seaside Sparrow, Hilton Head Island_

_SC 29728_

Owner ( ) Purchaser ( ) ( ) acknowledge receipt of a copy of this page which is page 1 of 5.

REV: 7/2013

Apply this question below and the three answer choices to the numbered issues (1-14) on this disclosure.
As owner, do you have any actual knowledge of any problem(s)* concerning?
*Problem includes present defects, malfunctions, damages, conditions, or characteristics.

## I. WATER SUPPLY AND SANITARY SEWAGE DISPOSAL SYSTEM

| | Yes | No | No Representation |
|---|---|---|---|
| 1. Water supply | ☐ | ☑ | ☐ |
| 2. Water quality | ☐ | ☑ | ☐ |
| 3. Water pressure | ☐ | ☑ | ☐ |
| 4. Sanitary sewage disposal system for any waste water | ☐ | ☑ | ☐ |

A. Describe water supply  ☐ County  ☑ City  ☐ Private  ☐ Corporate  ☐ Community  ☐ Well  ☐ Other_____

B. Describe water disposal  ☐ Septic  ☑ Sewer  ☐ Private  ☐ Corporate  ☐ Government  ☐ Other_____

C. Describe water pipes  ☐ PEX  ☐ Copper  ☐ PVC/CPVC  ☐ Polybutylene  ☐ Steel  ☑ Other/Unknown _I believe its PVC._

## II. ROOF, CHIMNEYS, FLOORS, FOUNDATION, BASEMENT, AND OTHER STRUCTURAL COMPONENTS AND MODIFICATIONS OF THESE STRUCTURAL COMPONENTS

| | Yes | No | No Representation |
|---|---|---|---|
| 5. Roof system | ☐ | ☑ | ☐ |
| 6. Gutter system | ☐ | ☑ | ☐ |
| 7. Foundation, slab, fireplaces, chimneys, wood stoves, floors, basement, windows, driveway, storm windows/screens, doors, ceilings, interior walls, exterior walls, sheds, attached garage, carport, patio, deck, walkways, fencing, or other structural components including modifications | ☐ | ☑ | ☐ |

A. Approximate year that current roof covering was installed or modified: _Don't Remember_ Approximate year structure was built: _1987 -_

B. During your ownership, describe any known roof system leaks and repairs: _NORMAL - NO KNOWN LEAKS IN YEARS_

## III. PLUMBING, ELECTRICAL, HEATING, COOLING, AND OTHER MECHANICAL SYSTEMS

| | Yes | No | No Representation |
|---|---|---|---|
| 8. Plumbing system (pipes, fixtures, water heater, disposal, softener, plumbing components) | ☐ | ☑ | ☐ |
| 9. Electrical system (wiring, panel, fixtures, A/V wiring, outlets, switches, electrical components) | ☐ | ☑ | ☐ |
| 10. Appliances (range, stove, ovens, dishwasher, refrigerator, washer, dryer, other appliances) | ☐ | ☑ | ☐ |
| 11. Built-in systems and fixtures (fans, irrigation, pool, security, lighting, A/V, other) | ☐ | ☑ | ☐ |
| 12. Mechanical systems (pumps, garage door opener, filtration, energy equipment, safety, other) | ☐ | ☑ | ☐ |
| 13. Heating system(s) (HVAC components) | ☐ | ☑ | ☐ |
| 14. Cooling system(s) (HVAC components) | ☐ | ☑ | ☐ |

Owner (____) (____) Purchaser (____) (____) acknowledge receipt of a copy of this page which is page 2 of 5.

A. Describe Cooling System   ☑ Central   ☐ Ductless   ☑ Heat Pump   ☐ Window   ☐ Other_____

B. Describe Heating System   ☑ Central   ☐ Ductless   ☑ Heat Pump   ☐ Furnace   ☐ Other_____

C. Describe HVAC Power   ☐ Oil   ☐ Gas   ☑ Electric   ☐ Solar   ☐ Other_____

D. Describe HVAC system approximate age and any other HVAC system(s): _____ 4 UNITS

## IV. PRESENT OR PAST INFESTATION OF WOOD DESTROYING INSECTS OR ORGANISMS OR DRY ROT OR FUNGUS, THE DAMAGE FROM WHICH HAS NOT BEEN REPAIRED

A. Describe any known present wood problems caused by termites, insects, wood destroying organisms, dry rot or fungus:

NONE KNOWN

B. Describe any termite/pest treatment, coverage to property, name of provider, and termite bond (if any):

—will provide

C. Describe any known present pest infestations:

NONE

## V. THE ZONING LAWS, RESTRICTIVE COVENANTS, BUILDING CODES, AND OTHER LAND USE RESTRICTIONS AFFECTING THE REAL PROPERTY, ANY ENCROACHMENTS OF THE REAL PROPERTY FROM OR TO ADJACENT REAL PROPERTY, AND NOTICE FROM A GOVERNMENTAL AGENCY AFFECTING THIS REAL PROPERTY

**Apply this question below and the three answer choices to the numbered issues (15-23) on this disclosure.**
As owner, do you have any actual knowledge or notice concerning the following:

| | Yes | No | No Representation |
|---|---|---|---|
| 15. Violations or variances of the following: zoning laws, restrictive covenants, building codes, permits or other land use restrictions affecting the real property | ☐ | ☒ | ☐ |
| 16. Easements (access, conservation, utility, other), party walls, shared private driveway, private roads, released mineral rights, or encroachments from or to adjacent real property | ☐ | ☒ | ☐ |
| 17. Legal actions, claims, foreclosures, bankruptcies, tenancies, judgments, tax liens, other liens, insurance issues, or governmental actions that could affect title to the property | ☐ | ☒ | ☐ |
| 18. Room additions or structural changes to the property during your ownership | ☐ | ☒ | ☐ |
| 19. Problems caused by fire, smoke, or water to the property during your ownership | ☐ | ☒ | ☐ |
| 20. Drainage, soil stability, atmosphere, or underground problems affecting the property | ☐ | ☒ | ☐ |
| 21. Erosion or erosion control affecting the property | ☐ | ☒ | ☐ |
| 22. Flood hazards, wetlands, or flood hazard designations affecting the property | ☒ | ☒ | ☐ |
| 23. Flood insurance covering the property | ☒ | ☐ | ☐ |

A. Describe any green energy, recycling, sustainability or disability features for the property: _____ None

B. Describe any Department of Motor Vehicles titled manufactured housing on the property: _____ N/A

Owner ☑ ( ) Purchaser ☑ ( ) ☑ acknowledge receipt of a copy of this page which is page 3 of 5.

## VI. BURIED, UNBURIED, OR COVERED PRESENCE OF THE FOLLOWING: LEAD BASED PAINT, LEAD HAZARDS, ASBESTOS, RADON GAS, METHANE GAS, STORAGE TANKS, HAZARDOUS MATERIALS, TOXIC MATERIALS, OR ENVIRONMENTAL CONTAMINATION

A. Describe any known property environmental contamination problems from construction, repair, cleaning, furnishing, intrusion, operating, toxic mold, methamphetamine production, lead based paint, lead hazards, asbestos, radon gas, methane gas, formaldehyde, corrosion-causing sheetrock, storage tanks, hazardous materials, toxic materials, environmental contamination, or other: _____ *N/A* _____
_____ *gas is propane - underground tank* _____

## VII. EXISTENCE OF A RENTAL, RENTAL MANAGEMENT, VACATION RENTAL, OR OTHER LEASE CONTRACT ANTICIPATED TO BE IN PLACE ON THE PROPERTY AT THE TIME OF CLOSING

A. Describe the lease terms and any leasing problems, if any: _____ *N/A* _____

B. State the name and contact information for any property management company involved (if any): _____ *N/A* _____

C. Describe known outstanding charges owed by tenant for gas, electric, water, sewer, and garbage: _____ *N/A* _____

## VIII. THE EXISTENCE OF A METER CONSERVATION CHARGE, AS PERMITTED BY SECTION 58-37-50 THAT APPLIES TO ELECTRICITY OR NATURAL GAS SERVICE TO THE PROPERTY

A. Describe any utility company financed or leased property on the real property: _____ *None* _____

B. Describe known delinquent charges for real property's gas, electric, water, sewer, and garbage: _____ *None* _____

## IX. PLEASE USE THE SPACE BELOW FOR "YES" ANSWER EXPLANATIONS AND ATTACH ANY ADDITIONAL SHEETS OR RELEVANT DOCUMENTS AS NEEDED

_____
_____
_____
_____
_____
_____

Owner: (____) (____) Purchaser: (____) (____) acknowledge receipt of a copy of this page which is page 4 of 5.

This disclosure does not limit the obligation of the purchaser to inspect the property and improvements which are the subject of the real estate contract. Purchaser is solely responsible for conducting their own off site conditions and psychologically affected property inspections prior to entering into a real estate contract. The real estate licensees (acting as listing or selling agents, or other) have no duty to inspect the on site or off site conditions of the property and improvements. Purchasers should review all applicable documents (covenants, conditions, restrictions, bylaws, deeds, and similar documents) prior to entering into any legal agreements including any contract. The South Carolina Code of Laws describes the Residential Property Condition Disclosure Statement requirements and exemptions at § 27-50-10 (and following) which can be read online (www.scstatehouse.gov or other websites).

**Current status of property or factors which may affect the closing:**

| | | | | |
|---|---|---|---|---|
| ☑ Owner occupied | ☐ Short sale | ☐ Bankruptcy | ☐ Vacant (How long vacant?) _____ | |
| ☐ Leased | ☐ Foreclosure | ☐ Estate | ☐ Other: _____ | |

A Residential Property Condition Disclosure Statement Addendum ☑ is ☐ is not completed and attached. This addendum should be attached if the property is subject to covenants, conditions, restrictions, bylaws, rules, or is a condominium.

Owner acknowledges having read, completed, and received a copy of this Residential Property Condition Disclosure Statement before signing and that all information is true and correct as of the date signed.

Owner Signature: _____ Date: 7-17-2014 Time: 11:00

Owner Printed Name: JAMES HEAVNER

Owner Signature: _____ Date: _____ Time: _____

Owner Printed Name: _____

**Purchaser acknowledges prior to signing this disclosure:**

- Receipt of a copy of this disclosure
- Purchaser has examined disclosure
- Purchaser had time and opportunity for legal counsel
- This disclosure is not a warranty by the real estate licensees
- This disclosure is not a substitute for obtaining inspections of on site and off site conditions

- This disclosure is not a warranty by the owner
- Representations are made by the owner and not by the owner's agents or subagents
- Purchasers have sole responsibility for obtaining inspection reports from licensed home inspectors, surveyors, engineers, or other qualified professionals

Purchaser Signature: _____ Date: 9/1/14 Time: _____

Purchaser Printed Name: ANDREA K. TARBOX

Purchaser Signature: David H Granger Date: 9/1/14 Time: 5:42 pm

Purchaser Printed Name: David H Granger



## STATE OF SOUTH CAROLINA
## RESIDENTIAL PROPERTY CONDITION
## DISCLOSURE STATEMENT ADDENDUM



Prior to signing contract, owner shall provide this disclosure addendum to the purchaser if the property is subject to a homeowners association, a property owners association, a condominium owners association, a horizontal property regime, or similar organizations subject to covenants, conditions, restrictions, bylaws or rules (CCRBR). These organizations are referred to herein as an owners association.

Purchasers should review the applicable documents (covenants, conditions, restrictions, bylaws, deeds, condominium master deed, and similar documents), all related association issues, and investigate the owners association prior to entering into any legal agreements including a contract. Owners association charges include any dues, fees, assessments, reserve charges, or any similar charges. Purchasers are solely responsible to determine what items are covered by the owners association charges.

Property Address: _15° Seaside Sparrow Hilton Head Island, SC 27928_

Describe owners association charges: $_____ Per _____ (month/year/other)

What is the contact information for the owners association? _____

---

**As owner do you have any actual knowledge of answers to the following questions? Please check the appropriate box to answer the questions below.**

|  | Yes | No | No Representation |
|---|---|---|---|
| 1. Are there owners association charges or common area expenses? | ☑ | ☐ | ☐ |
| 2. Are there any owners association or **CCRBR** resale or rental restrictions? | ☐ | ☑ | ☐ |
| 3. Has the owners association levied any special assessments or similar charges? | ☐ | ☑ | ☐ |
| 4. Do the **CCRBR** or condominium master deed create guest or visitor restrictions? | ☑ | ☐ | ☐ ✗ |
| 5. Do the **CCRBR** or condominium master deed create animal restrictions? | ☑ | ☐ | ☐ |
| 6. Does the property include assigned parking spaces, lockers, garages or carports? ....N.A. | ☐ | ☐ | ☐ |
| 7. Are keys, key fobs or access codes required to access common or recreational areas? ....N.A. | ☐ | ☐ | ☐ |
| 8. Will any membership other than owner association transfer with the properties? ....N.A. | ☐ | ☐ | ☐ |
| 9. Are there any known common area problems? | ☐ | ☑ | ☐ |
| 10. Is property or common area structures subject to South Carolina Coastal Zone Management Act? | ☐ | ☑ | ☐ |
| 11. Is there a transfer fee levied to transfer the property?* | ☐ | ☑ | ☐ |

*(\* Question does not include recording costs related to value or deed stamps.)*

Explain any yes answers in the space below and attach any additional sheets or relevant documents as needed: _GUARD_

_gate to enter Sea Pines_

Owner signature: _____ Date: _7-17 2014_ Time: _11:02_

Owner signature: _____ Date: _____ Time: _____

Purchaser signature: _____ Date: _9/1/14_ Time: _5:40_

Purchaser signature: _____ Date: _9-1-14_ Time: _5:40_

# J.P.Morgan

Date: 08/19/2014

Loan #: 1100295361

## CONDITIONAL APPROVAL LETTER
Residential First Mortgage Loan

Dear: ANDREA K TARBOX
DAVID GRANSEE

Thank you for considering J.P. Morgan for your mortgage. We are pleased to inform you that we have issued a conditional approval for your request for a residential mortgage in the amount of $3,000,000 for a J.P. Morgan 7/1 Year LIBOR ARM - 30 Years - 2/2/5 Caps - IO for 10 Years, 360 month term, based upon the subject property being your Secondary Residence. This approval is subject to the terms and conditions set forth in this letter and on the attached conditions page.

Please note that your credit has been reviewed at an assumed interest rate of 3.625%. If this loan is a variable rate product, the interest rate identified is an initial rate that is subject to periodic change.

This approval will expire on 11/05/2014.

In order to obtain a commitment from J.P. Morgan, the conditions on the attached conditions page must be met to our satisfaction. This Conditional Approval is based on the information you provided in your application, is not a commitment and may be subject to revision or revocation if there are changes to our credit policy or loan programs. With your best interests in mind, J.P. Morgan will not make high-cost loans. A high cost loan is a loan where rate and fees exceed certain thresholds established by law. Therefore, this Conditional Approval is subject to J.P. Morgan's determination that the loan is not a high-cost loan.

If there is a significant change in your financial or credit condition or in any other information provided to us, we reserve the right to cancel this approval. This approval is subject to compliance with all federal, state, and local laws, rules and regulations and the execution of all documentation that we require. Under the Federal Equal Credit Opportunity Act, we are obligated to notify you that the documents and conditions listed on the attached conditions page are required in order to give your request further consideration. In order to obtain a commitment from J.P. Morgan, the documents and the conditions must be received or met to our satisfaction. You will need to send the documentation to us or satisfy the conditions no later than 11/05/2014. We will then request an appraisal to determine the value and sufficiency of the property. However, if the conditions outlined on the attached Conditions page are not met within 90 days of the date of this letter, updated financial and credit information may be required once those conditions are met. We will issue a commitment after the application has been fully processed and all information and documentation submitted has been verified. Unfortunately, if we do not receive the items or if the conditions are not satisfied by the expiration date we will be unable to further consider your request for credit, and will cancel your application. If we approve your fully processed and verified mortgage request, we will provide you with a commitment, which will supersede this approval.

If you have any questions, please contact your J.P. Morgan team.

1100295361
Conditional Approval Letter

J.P. Morgan
201408104.1 0.2847-N20140420Y

100595749
Rev. 08/13
Page 1 of 3

## ADDENDUM TO CONTRACT

**THIS ADDENDUM TO CONTRACT** ("Addendum") is made a part of the Contract of Sale-Offer and Acceptance by and between James A. Heavner ('Seller") and Andrea Tarbox and David Gransee ( "Purchasers") dated September 2, 2014 ("Contract")

**WHEREAS,** The Seller and Purchasers initialed several handwritten revisions on the Contract; and

**WHEREAS,** The Purchaser's lender has required that the handwritten revisions be restated in this Addendum for clarification.

**NOW, THEREFORE,** know all persons that in consideration of the terms and conditions of the Contract, which the parties reaffirm, the parties agree that the following language was included in the Contract.

1.    Financing Contingency. The second sentence in the second paragraph of Section 3 of the Contract as revised states, "If Purchaser's bona fide loan application does not result in a loan commitment within the above time, or if any time after a loan commitment is accepted but prior to Closing the Lender withdraws financing, Purchaser shall have affirmative obligation of providing written notice to Seller or Seller's agent that the financing contingency has not been satisfied and that the Purchaser has elected to terminate this Contract for failure to obtain financing."

2.    Furnishings, Systems. Section 4 includes a sound system, flat screen televisions, as well as porch furnishings.

3.    Deposit/Default. In Section 9 an extra sentence has been added which reads as follows, "Neither party shall responsible liable for specific performance, consequential and/or incidental damages and or damages resulting from lost or opportunities in any amount in excess of the deposit."

4.    Miscellaneous. The handwritten sentence on page 5 of the Contract reads as follow, "The Seller understands that the Purchasers may assign their rights under this Contract to a trust, limited liability company, or other entity to purchase the property, and Seller consents to such assignment provided the original Purchaser shall not be released from their obligation under this Contract unless otherwise agreed."

5.    Inspection Addendum. The following handwritten sentence was added to the Inspection Addendum, "In the event Purchaser elects to terminate the Contract on account of such failure to address, the Purchaser shall be entitled to receive back all money deposited hereunder."

In Witness whereof the undersigned Seller and Purchasers have executed this Addendum effective September _____, 2014.

_____ 9/26/2014            _____
                                                   James A. Heavner, Seller

_____

_____                      _____
                                                   Andrea Tarbox, Purchaser

_____                      _____
                                                   David Gransee, Purchaser

HILTONHEAD 869346v1 062215-00001