# UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## DURHAM DIVISION

| | |
|---|---|
| **IN RE:**<br><br>**UNIVERSITY DIRECTORIES, LLC,** *et al.,*<br><br><br>**DEBTORS.** | **CASE NO. 14 - 81184**<br>**(CONSOLIDATED FOR PURPOSES OF ADMINISTRATION)**<br><br>**CHAPTER 11** |
| **Joint Motion To Authorize Intercompany Post-Petition Financing** | |

NOW COME University Directories, LLC ("UD"), Print Shop Management, LLC ("Print Shop"), Vilcom, LLC ("Vilcom"), Vilcom Interactive Media, LLC ("VIM"), Vilcom Properties, LLC ("VP") and Vilcom Real Estate Development (VRD), LLC ("VRD," and collectively, the "Debtors"), and move the Court pursuant to § 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure as follows:

1.      On October 24, 2014 (the "Petition Date"), the Debtors filed voluntary petitions seeking relief under Chapter 11 of the Bankruptcy Code. Subsequent to the filings, an Order for relief was entered in each proceeding and the cases were consolidated for purposes of administration only. The Debtors continue in possession of their respective assets and operate their respective businesses as debtors-in-possession. An official committee of unsecured creditors (the "Committee") has been duly appointed.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, and this matter is a core proceeding under 28 U.S.C. §157(b)(2). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

3.      The nature of the property owned by the Debtors and the secured debt of UDX, LLC ("UDX"), the Debtors' primary secured creditor, is more specifically outlined in the Joint Motion for Authority to Use Cash Collateral (Dkt. No. 8, the "Cash Collateral Motion") filed on October 24, 2014, and summarized below to the extent relevant to this Motion.

**Background**

4.      In connection with its business operations, UD executed certain documents (the "UD Loan Documents") in favor of Harrington Bank, FSB ("Harrington Bank"), pursuant to which the outstanding indebtedness of UD to Harrington Bank as evidenced by four (4) promissory notes (the "UD Notes") is secured by substantially all assets of UD, including inventory, equipment, accounts and general intangibles. The UD Notes are also secured by substantially all assets of Print Shop, Vilcom and VIM, including inventory, equipment, accounts and general intangibles.

5.      As of the Petition Date, VRD owned residential real properties located at (i) 740 Gimghoul Road, Chapel Hill, North Carolina (the "Gimghoul Property") and (ii) 15 Seaside Sparrow Road, Hilton Head, South Carolina (the "Hilton Head Property").

6.      In connection with the purchase and construction of the Gimghoul Property, VRD executed certain documents (the "VRD Loan Documents") to secure the present and future indebtedness of VRD to Harrington Bank as evidenced by a promissory note (the "VRD Note") pursuant to which such indebtedness is secured by a first priority lien upon the Gimghoul Property.

7.      In or about May of 2014, VRD and Heavner, respectively, also executed deeds of trust which provided Harrington Bank with junior liens on the Gimghoul Property and the Hilton Head Property to secure up to $1,000,000 of the indebtedness evidenced by the UD Notes.

8.      Upon information and belief, all of the UD Loan Documents and VRD Loan Documents have been assigned to and are presently held by UDX.  No proof of claim has been filed by UDX, but on October 23, 2014, counsel for UDX provided a payoff statement of all the loans held by UDX, summarized as follows:

| VRD Note | $3,388,162.88 |
|---|---|
| UD Note 19653 | $183,576.32 |
| UD Note 31250 | $888,948.57 |
| UD Note24730 | $235,193.47 |
| UD Note16691 | $573,711.64 |
| Legal Fees | $50,000.00 |
| Other Fees & Charges | $207,500.00 |
| Total | $5,527,092.89 |

9.	The claims asserted by UDX are disputed by the Debtors and are the subject of an adversary proceeding filed by the Debtors and seeking, *inter alia*, the following relief:

a.	Judgment awarding damages in an aggregate amount equal to (A) (i) the amount of the Non-Refundable Deposit of $200,000, (ii) the amount of Plaintiffs' attorneys' fees, administrative expenses and other costs incurred in the Chapter 11 proceedings, and (iii) the amount of any loss or diminution in value of Plaintiffs' assets suffered as a result thereof, all trebled pursuant to N. C. Gen. Stat. § 75-16, and (B) Plaintiffs' reasonable attorneys' fees and costs incurred in the adversary proceeding pursuant to N. C. Gen. Stat. § 75-16.1.

b.	Entry of an Order pursuant to Section 510 of the Bankruptcy Code directing that the UD Loans and the VRD Loan may be satisfied in full upon payment of the aggregate amount paid by UDX or its affiliates to Bank of North Carolina to acquire the Loans[1] less (i) credit for any amounts received by UDX or its affiliates on account of such Loans, and (ii) setoff of any damages, fees or costs awarded to the Debtors against UDX or its affiliates in the adversary proceeding,.

c.	Entry of an Order pursuant to Section 548 of the Bankruptcy Code avoiding the junior lien on the Gimghoul Property securing the UD loans.

10.	The closing on the sale of the Hilton Head Property occurred on November 26, 2014 and net proceeds of approximately $808,378, subject to the UDX liens, are being held in escrow pending further orders of this Court.

11.	The Gimghoul Property is now under contract of sale subject to approval by this Court, which if approved and closed will generate net sale proceeds of approximately $4,400,000, subject to the UDX liens, which will also be held in escrow pending further orders of this Court.

12.	In addition to the aggregate proceeds of approximately $5,208,378 derived from the sale of the real properties, the accounts receivable, inventory, and VIM intangible assets which secure the loans held by UDX (the "Other Collateral") had an aggregate value as of the

---

[1] UDX and Bank of North Carolina have refused to disclose the amount paid by UDX to acquire the Harrington Bank Loans, but Debtors believe the loans were purchased for less than $4,800,000.

Petition Date of approximately $2,978,851. Thus, all the assets presently securing the loans held by UDX had an aggregate net value as of the Petition Date of at least $8,187,229.

**Relief Requested**

13. The Debtors have separately filed the Cash Collateral Motion wherein the Debtors seek authority to use the operating income from the businesses to operate, maintain, preserve and protect all the assets of the Debtors, including those which are subject to the security interests asserted by UDX.

14. As set forth in the Cash Collateral Motion, the Interim Orders and the budgets attached thereto, the Debtors project sufficient operating income, when combined with the Debtors' cash reserves as of the Petition Date, to pay all of the costs or expenditures likely to arise through the week ending December 14, 2014.

15. However, the Debtors will likely need post-petition financing from time to time thereafter to supplement revenues and pay the on-going costs of operating, preserving, and protecting the business and property of the estates, as well as the costs of administration (including professional fees and court fees). The post-petition financing is thus necessary to preserve the going-concern value of the businesses for the benefit of creditors and the estates.

16. The Debtors have been unable to obtain unsecured credit allowable under Section 503(b)(1) as an administrative expense, and seek authority for VRD to provide post-petition financing to the other Debtors in accordance with the proposed order attached as **Exhibit A** and the proposed Post-petition Financing Agreement attached as **Exhibit B**, and the cash collateral budgets approved by the Court from time to time hereafter.

17. The post-petition financing would be in an amount not to exceed $1,000,000 and would be funded by the use of a portion of the net sale proceeds of the Gimghoul Property and the Hilton Head Property. The financing could be advanced from time to time, provided that the UDX Collateral has and maintains at all times an aggregate value which is not less one hundred twenty percent (120%) of the claims asserted by UDX as of the Petition Date, pending a final determination of such claims, and sufficient to adequately protect UDX for the use of its cash collateral in this manner.

18. The value of the UDX Collateral for purposes of determining compliance with the 120% collateralization formula would be calculated as follows:

Post-Petition Financing motion 2014-12-04.docx              4

Case 14-81184  Doc 111  Filed 12/05/14  Page 4 of 23

a.    100% of funds on deposit in the debtor-in-possession accounts.[2]

b.    100% of funds held in escrow and derived from the sale of the Gimghoul Property and the Hilton Head Property.

c.    80% of the value of the accounts receivable, after allowance for doubtful accounts.

d.    50% of the value of the inventory, at cost.

e.    $350,000 as the estimated net liquidation value of the VIM collateral.

19.    VRD would advance funds to each Debtor-Borrower ("Borrower") as needed to meet the obligations described below, no interest would be charged on the amounts advanced, and all principal owed by a Borrower would be due and payable to VRD in full upon the earliest of (a) the date of closing of a sale of all or substantially all of the assets of the Borrower, (b) thirty (30) days after the Effective Date of any Plan of Reorganization confirmed by the Court, and (c) the dismissal or conversion to Chapter 7 of the Borrower's case.

20.    The financing would be used to fund the Borrower's operating expenses, costs of administration (including professional fees of the Debtors and the Committee and the quarterly fees payable to the Court), capital expenditures, and other expenses to the extent such expenditures are authorized pursuant by this Court pursuant to any Cash Collateral Order or otherwise.

21.    The financing would not be secured by a lien on any assets of any of the Borrowers. VRD would have a super-priority administrative expense claim pursuant to § 364(c)(1) in each Borrower's case equal to the outstanding amount of the funds advanced to such Borrower, subject and subordinate to the payment of:

a.    The Borrower's fees specified in 28 U.S.C. § 1930, and

b.    A carve-out (the "Carve-Out") for the Borrower's pro rata share of professional fees (i) in an aggregate amount for all Borrowers not to exceed $125,000 ($100,000 for the Debtors' professionals and $25,000 for the Committee's professionals), (ii) for the payment of allowed but unpaid fees of such professionals approved by the Court pursuant to sections 327 or 328 of the

---

[2] This would exclude $57,640 held in the Northen Blue Trust Account as of the Petition Date which are the remaining proceeds from the loan of the Alpert Family Foundation.

Bankruptcy Code, and (iii) to the extent such expenditures have not been paid and cannot be funded through the use of cash collateral.

22.    An order granting interim relief, followed by a final hearing at some future date selected by the Court, would not prejudice the rights of creditors in this proceeding, and the use of such funds is necessary to assure continued operations without interruption and preserve the value of the estates for creditors.

WHEREFORE, the Debtors pray the Court for the following relief:

1.    Enter an interim financing order in the form attached hereto as **Exhibit A** authorizing the Debtors to obtain post-petition financing upon the terms and conditions set forth above.

2.    Schedule a final hearing regarding this motion, provide such notice as is required by Rule 4001 of the Federal Rules of Bankruptcy Procedure, and upon conclusion of the final hearing enter a final order approving and authorizing the post-petition financing as requested herein.

3.    Such other relief as the Court may deem necessary and proper.

RESPECTFULLY submitted on behalf of the Debtors, this the 5th day of December, 2014.

/s/John A. Northen

**Counsel for the Debtors:**
John A. Northen, NCSB #6789
jan@nbfirm.com
Vicki L. Parrott, NCSB #25449
vlp@nbfirm.com
John Paul H. Cournoyer, NCSB #42224
jpc@nbfirm.com
Northen Blue, LLP
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone: 919-968-4441

Exhibit A, Proposed Interim Order

**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**DURHAM DIVISION**

| | |
|---|---|
| **IN RE:**<br><br>**UNIVERSITY DIRECTORIES, LLC,** *et al.,* | **CASE NO. 14 - 81184**<br>**(CONSOLIDATED FOR PURPOSES OF ADMINISTRATION)** |
| **DEBTORS.** | **CHAPTER 11** |
| **Interim Order Authorizing Intercompany Post-Petition Financing** | |

This matter came before the Count on December __, 2014 to consider the "Joint Motion To Authorize Intercompany Post-Petition Financing" (the "Motion") filed by University Directories, LLC ("UD"), Print Shop Management, LLC ("Print Shop"), Vilcom, LLC ("Vilcom"), Vilcom Interactive Media, LLC ("VIM"), Vilcom Properties, LLC ("VP") and Vilcom Real Estate Development (VRD), LLC ("VRD" and collectively, the "Debtors") pursuant to § 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

After considering the matters set forth in the Motion and based upon the consent of all parties appearing at the hearing, the Court makes the following findings, conclusions and Orders, as follows:

1. On October 24, 2014 (the "Petition Date"), the Debtors filed voluntary petitions seeking relief under Chapter 11 of the Bankruptcy Code. Subsequent to the filings, an Order for relief was entered in each proceeding and the cases were consolidated for purposes of

administration only.  The Debtors continue in possession of their respective assets and operate their respective businesses as debtors-in-possession. An official committee of unsecured creditors (the "Committee") has been duly appointed.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, and this matter is a core proceeding under 28 U.S.C. §157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

3.      The nature of the property owned by the Debtors and the secured debt of UDX, LLC ("UDX"), the Debtors' primary secured creditor, is more specifically outlined in the Joint Motion for Authority to Use Cash Collateral (Dkt. No. 8, the "Cash Collateral Motion") filed on October 24, 2014, and summarized below to the extent relevant to this Motion.

4.      In connection with its business operations, UD executed certain documents (the "UD Loan Documents") in favor of Harrington Bank, FSB ("Harrington Bank"), pursuant to which the outstanding indebtedness of UD to Harrington Bank as evidenced by four promissory notes (the "UD Notes") is secured by substantially all assets of UD, including inventory, equipment, accounts and general intangibles.

5.      Print Shop executed certain documents to secure the present and future indebtedness of UD to Harrington Bank, pursuant to which such indebtedness is secured by substantially all assets of the Print Shop, including inventory, equipment, accounts and general intangibles.

6.      Vilcom executed certain documents to secure the present and future indebtedness of UD to Harrington Bank, pursuant to which such indebtedness is secured by a blanket lien upon the inventory, equipment, accounts and general intangibles of Vilcom.

7.      VIM executed certain documents to secure the present and future indebtedness of UD to Harrington Bank, pursuant to which such indebtedness is secured by a blanket lien upon the inventory, equipment, accounts and general intangibles of VIM.

8.      As of the Petition Date, VRD owned residential real properties located at (i) 740 Gimghoul Road, Chapel Hill, North Carolina (the "Gimghoul Property") and (ii) 15 Seaside Sparrow Road, Hilton Head, South Carolina (the "Hilton Head Property").

9.      In connection with the purchase and construction of the Gimghoul Property, VRD executed certain documents (the "VRD Loan Documents") to secure the present and future indebtedness of VRD to Harrington Bank as evidenced by a promissory note (the "VRD Note")

pursuant to which such indebtedness is secured by a first priority lien upon the Gimghoul Property.

      10.    In or about May of 2014, VRD and Heavner, respectively, also executed deeds of trust which provided Harrington Bank with junior liens on the Gimghoul Property and the Hilton Head Property to secure up to $1,000,000 of the indebtedness evidenced by the UD Notes.

      11.    All of the UD Loan Documents and VRD Loan Documents have been assigned to and are presently held by UDX. No proof of claim has been filed by UDX, but on October 23, 2014, counsel for UDX provided a payoff statement of all the loans held by UDX, summarized as follows:

| VRD Note | $3,388,162.88 |
|---|---|
| UD Note 19653 | $183,576.32 |
| UD Note 31250 | $888,948.57 |
| UD Note24730 | $235,193.47 |
| UD Note16691 | $573,711.64 |
| Legal Fees | $50,000.00 |
| Other Fees & Charges | $207,500.00 |
| Total | $5,527,092.89 |

      12.    The claims asserted by UDX are disputed by the Debtors, who have filed an adversary proceeding seeking (i) damages, (ii) entry of an Order providing that the UD Loans and the VRD Loan may be satisfied in full upon payment of the aggregate amount paid to Bank of North Carolina to acquire the Loans, less certain credits and offsets, and (iii) avoidance of the junior lien on the Gimghoul Property securing the UD loans.

      13.    The closing on the sale of the Hilton Head Property occurred on November 26, 2014 and net proceeds of approximately $808,378, subject to the UDX liens, are being held in escrow pending further orders of this Court.

      14.    The Gimghoul Property is now under contract of sale subject to approval by this Court, which if approved and closed will generate net sale proceeds of approximately $4,400,000, subject to the UDX liens, which will also be held in escrow pending further orders of this Court.

15.     The Gimghoul Property is now under contract of sale which if closed will generate net sale proceeds of approximately $4,400,000, subject to the UDX liens, and will be held in escrow pending further orders of this Court.

16.     The Debtors have estimated the aggregate value of the accounts receivable, inventory, and VIM intangible assets which secure the loans held by UDX (the "Other Collateral") at approximately $2,978,800. Thus, all the assets presently securing the loans held by UDX had an aggregate net value as of the Petition Date of at least $8,187,229.

17.     The Debtors have separately filed the Cash Collateral Motion wherein the Debtors seek authority to use the operating income from the businesses of UD and Print Shop to operate, maintain, preserve and protect all the assets of the Debtors, including those which are subject to the security interests asserted by UDX, and the Court has entered Interim Orders authorizing the use of cash collateral as provided therein.

18.     The Debtors will likely need post-petition financing to supplement revenues and timely pay the on-going costs of operating, preserving, and protecting the business and property of the estates, and the costs of administration (including professional fees and court fees). The post-petition financing is thus necessary to preserve the going-concern value of the businesses for the benefit of creditors and the estates.

19.     The Debtors have been unable to obtain unsecured credit allowable under Section 503(b)(1) as an administrative expense, and seek authority for VRD to provide post-petition financing to the other Debtors which is not secured by a lien upon any assets but will be entitled to super-priority administrative expense status, in accordance with the Post-petition Financing Agreement attached to the Motion and the cash collateral budgets approved by the Court from time to time hereafter.

Based on the foregoing findings, the Court concludes that an order granting interim relief followed by a hearing at a future date (which may be a final hearing) would not prejudice the rights of creditors in these proceedings, and the use of such funds is necessary to continue operations without interruption and preserve the value of the estates for creditors.

NOW, THEREFORE, it is hereby ORDERED as follows:

1.     The Motion is granted on an interim basis and for the period through and including _____, 2015 (the "Interim Period").

2. During the Interim Period, VRD is authorized to provide post-petition financing and to advance such portion of the net sale proceeds of the Gimghoul Property and the Hilton Head Property as may be required to meet the funding needs as set forth herein, provided that the UDX Collateral has and maintains at all times an aggregate value which is not less one hundred percent (120%) of the claims asserted by UDX as of the Petition Date, pending a final determination of such claims.

3. The value of the UDX Collateral for purposes of determining compliance with the 120% collateralization formula would be calculated as follows:

    a. 100% of funds on deposit in the debtor-in-possession accounts.

    b. 100% of funds held in escrow and derived from the sale of the Gimghoul Property and the Hilton Head Property.

    c. 80% of the value of the accounts receivable, after allowance for doubtful accounts.

    d. 50% of the value of the inventory, at cost.

    e. $350,000 as the estimated net liquidation value of the VIM collateral.

4. VRD is authorized to advance funds to each Debtor-Borrower ("Borrower") as needed to meet the obligations described below, and absent an Event of Default no interest shall be charged on the amounts advanced. The Borrowers shall not repay any amounts advanced by VRD absent further order of this Court after notice and hearing.

5. All principal (and any default interest) owed by a Borrower shall be due and payable to VRD in full upon the earliest of (a) the date of closing of a sale of all or substantially all of the assets of the Borrower, (b) thirty (30) days after the Effective Date of any Plan of Reorganization confirmed by the Court, and (c) the dismissal or conversion to Chapter 7 of the Borrower's case.

6. The financing shall be used to fund the Borrower's operating expenses, costs of administration (including professional fees of the Debtors and the Committee, and the quarterly fees payable to the Court), capital expenditures, and other expenses to the extent such expenditures are authorized pursuant by this Court pursuant to any Cash Collateral Order or otherwise.

7. The financing would not be secured by a lien on any assets of any of the Borrowers. VRD would have a super-priority administrative expense claim pursuant to §

364(c)(1) in each Borrower's case equal to the outstanding amount of the funds advanced to such Borrower, subject and subordinate to the payment of:

    a.    The Borrower's fees specified in 28 U.S.C. § 1930, and

    b.    A carve-out (the "Carve-Out") for the Borrower's pro rata share of professional fees (i) in an aggregate amount for all Borrowers not to exceed $125,000 ($100,000 for the Debtors' professionals and $25,000 for the Committee's professionals), (ii) for the payment of allowed but unpaid fees of such professionals approved by the Court pursuant to sections 327 or 328 of the Bankruptcy Code, and (iii) to the extent such expenditures have not been paid and cannot be funded through the use of cash collateral.

8.    The terms of this Interim Order shall be binding upon any official committee and any trustee subsequently appointed, including but not limited to a Chapter 7 trustee upon conversion of any of these Chapter 11 cases to a case under Chapter 7 of the Bankruptcy Code, and the terms of this Interim Order shall survive dismissal of any of these cases.

4.    Notwithstanding the foregoing, the findings, conclusions, or orders set forth herein are made on an interim basis, shall not constitute a final decision on any legal or factual issue, and are without prejudice to the right of any party to raise, contest, or seek the same or different outcome at any subsequent hearing; provided however, that based on the findings set forth in this Interim Order and the reliance of VRD in good faith on the terms thereof:

    a.    If any of the provisions of this Interim Order are hereafter modified, vacated or stayed by an order of this Court or another court, such stay, modification or vacation shall not affect the validity and enforceability of the super-priority administrative expense claim authorized for the benefit of VRD that is granted pursuant to the terms of this Interim Order.

    b.    Any financing advanced by VRD to the Borrower- Debtors pursuant to this Interim Order prior to the effective date of such modification, stay or vacation shall be governed in all respects by the original provisions of this Interim Order.

    c.    Upon the entry and effect of any stay, modification of vacation of this Interim Order, the Borrower-Debtors' ability to obtain post-petition financing

hereunder shall be deemed immediately terminated without further order of the Court.

5.     A further hearing (which may be a final hearing) on this Motion will be held at 10:00 o'clock a.m. on _____, 2015, in the Courtroom, U.S. Bankruptcy Court, 302 East Pettigrew Street, Durham, NC 27701, at which time the Court will further consider the Motion.

6.     Debtors' counsel shall serve a copy of this Order upon the Bankruptcy Administrator, the creditors asserting a lien on any property of the estates, and counsel for the Committee, and shall file a certificate of such service with the Clerk.

[END OF DOCUMENT]

Exhibit B, Proposed Financing Agreement

# POST-PETITION FINANCING AGREEMENT

This POST-PETITION FINANCING AGREEMENT (this "Agreement") is made as of December __, 2014, by and among University Directories, LLC ("UD"), Print Shop Management, LLC ("Print Shop"), Vilcom, LLC ("Vilcom"), Vilcom Interactive Media, LLC ("VIM"), and Vilcom Properties, LLC ("VP")(each of which are individually referred to herein as "Borrower" and collectively as "Borrowers") and Vilcom Real Estate Development (VRD), LLC ("VRD") as the "Lender."

## BACKGROUND

On October 24, 2014, Borrowers and VRD filed petitions under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the Middle District of North Carolina. Borrowers have requested that VRD provide short term financing by making available to Borrowers a credit facility, not to exceed $1,000,000, as more fully described herein in order to supplement revenues and timely pay the on-going costs of operating, preserving, and protecting the business and property of the Borrowers' bankruptcy estates. This financing is necessary to preserve the going-concern value of the Borrowers' assets for the benefit of creditors and the bankruptcy estates. Subject to the terms and conditions set forth herein, VRD has agreed to provide such financing.

§1    **Definitions**:  Certain capitalized terms are defined below:

Agreement:  This Post-Petition Financing Agreement, as amended and in effect from time to time.

Bankruptcy Code:  Title 11, United States Code.

Bankruptcy Court:  The United States Bankruptcy Court for the Middle District of North Carolina or such other court having jurisdiction over the Case.

Borrower(s):  University Directories, LLC ("UD"), Print Shop Management, LLC ("Print Shop"), Vilcom, LLC ("Vilcom"), Vilcom Interactive Media, LLC ("VIM"), and Vilcom Properties, LLC ("VP").

Budget:  The Borrowers' cash collateral budgets as may be approved by the Bankruptcy Court from time to time.

Cases:  The Borrowers' chapter 11 cases pending in the Bankruptcy Court, respectively, and consolidated for purposes of administration as Case No. 14-81184.

Disbursement Date:  Any date on which amounts of the loan are disbursed to or for the benefit of a Borrower.

Financing Documents:  This Agreement and all of the promissory notes, instruments, agreements and other documents executed in connection herewith and therewith.

<u>Interim Order</u>: An order of the Bankruptcy Court in the Cases authorizing and approving this Agreement on an interim basis under Section 364(b) of the Bankruptcy Code and Bankruptcy Rule 4001.

<u>Lender</u>: Vilcom Real Estate Development (VRD), LLC.

<u>Loans</u>: The Obligations of Borrowers to Lender as set forth herein.

<u>Maturity Date</u>: With respect to each Borrower, the date which is the earliest of (a) the date of closing of a sale of all or substantially all of the assets of the Borrower, (b) thirty (30) days after the Effective Date of any Plan of Reorganization confirmed by the Court, (c) the dismissal or conversion to Chapter 7 of the Borrower's case.

<u>Obligations</u>: All indebtedness, obligations and liabilities of a Borrower to the Lender under the Financing Documents.

<u>Orders</u>: The Interim Orders and the Final Order.

<u>Petition Date</u>: October 24, 2014.

<u>Plan</u>: A plan of reorganization or liquidation in the Cases.

§2      **Financing**.

§2.1     **Loans**.

(a)      Upon the terms and subject to the conditions of this Agreement, and further subject to the terms of and to any limitations on borrowing or other extensions of credit contained in the Interim Order or the Final Order, whichever is then in effect, the Lender agrees to lend to Borrowers up to the aggregate original principal amount of $1,000,000 which shall be reflected in promissory notes executed by each Borrower, a form of which is attached as <u>Exhibit A</u> hereto (individually, the "Note," and collectively, the "Notes").

(b)      The maximum aggregate amount of the Notes shall be $1,000,000 (the "Proceeds"), which shall be advanced to or for the benefit of the Borrowers for use in accordance with the Financing Documents, the Orders and the Budget.

(c)      After the entry of the Interim Order, the Lender shall transfer Proceeds to Borrowers upon request made by any Borrower to Lender (a "Disbursement Request") and the Proceeds shall be used solely for the purposes set forth in the Budget or as otherwise permitted by the Bankruptcy Court.

§2.2     **Interest**. Absent an Event of Default, no interest shall be charged on the outstanding principal amount.

§2.3 **Repayments and Prepayments**. Borrower hereby agrees to pay the Lender on the Maturity Date the entire unpaid principal of and any interest on all Obligations of Borrower. Borrower may prepay the outstanding principal under the Note at any time without premium or penalty. Each Borrower shall not be obligated to pay any amount owed to Lender by any other Borrower, and each Note shall be a separate obligation of the Borrower executing the Note.

§3 **Administrative Expense Claim**. Upon entry of the Interim Order or the Final Order, whichever first occurs, the Obligations of Borrower hereunder and pursuant to the Note shall at all times constitute a super-priority administrative expense allowable under Section 364(c)(1) of the Bankruptcy Code in each Borrower's case equal to the outstanding amount of the funds advanced to such Borrower, subject and subordinate to the payment of (a) the Borrower's fees to the Court as specified in 28 U.S.C. § 1930, and (b) a carve-out (the "Carve-Out") for the Borrower's pro rata share of professional fees (i) in an aggregate amount for all Borrowers not to exceed $125,000 (for the Debtors' professionals and $25,000 for the Committee's professionals), (ii) for the payment of allowed but unpaid fees of such professionals approved by the Court pursuant to sections 327 or 328 of the Bankruptcy Code, and (iii) to the extent such expenditures have not been paid and cannot be funded through the use of cash collateral. So long as no Event of Default shall have occurred and be continuing, Borrower shall be permitted to pay, as and when the same become due and payable, administrative expenses of the kind specified in 11 U.S.C. §503(b) incurred in the ordinary course of business of Borrower or otherwise approved by the Bankruptcy Court after notice and hearing, and compensation and reimbursement expenses allowed and payable under 11 U.S.C. §330 and 11 U.S.C. §331, including periodic payments on account thereof as permitted by the Bankruptcy Court; in each case to the extent that such payment is otherwise not prohibited by any of the terms of this Agreement.

§4 **Events of Default; Acceleration**. If (a) any Borrower shall fail to any principal of the Note, when the same becomes due and payable hereunder, or (b) the Bankruptcy Court enters an order terminating any Borrower's ability to obtain post-petition financing from Lender, then (i) the Lender's Commitments are immediately terminated, and (ii) the unpaid principal amount of the Loans are immediately due and payable unless otherwise ordered by the Court.

§5 **Miscellaneous**.

(a) This Agreement shall be binding upon and inure to the benefit of each party hereto and its successors and assigns. In addition, this Agreement shall be binding on any Chapter 7 Trustee appointed in any of the Cases.

(b) This Agreement and the Financing Documents shall for all purposes be governed and construed in accordance with the law of the State of North Carolina (excluding the laws applicable to conflicts or choice of law).

**IN WITNESS WHEREOF,** the undersigned have duly executed this Agreement as a sealed instrument as of the date first above written.

| University Directories, LLC | Print Shop Management, LLC | Vilcom, LLC |
|---|---|---|
| By: _____ | By: _____ | By: _____ |
| Vilcom Interactive Media, LLC | Vilcom Properties, LLC | Vilcom Real Estate Development (VRD), LLC |
| By: _____ | By: _____ | By: _____ |

# PROMISSORY NOTE

<u>UP TO $1,000,000</u>                                             December __, 2014

       FOR VALUE RECEIVED, the undersigned ("Borrower"), hereby promises to pay to the order of Vilcom Real Estate Development (VRD), LLC ("Lender") on the Maturity Date (i) the outstanding principal amount owed by Borrower to Lender pursuant to the Post-Petition Financing Agreement dated as of December __, 2014 (as amended and in effect from time to time, the "Financing Agreement"), among Borrowers and the Lender thereto; and (ii) in the event of a default, interest on the unpaid principal balance at the rate provided in the Financing Agreement.

       Lender shall keep records of the unpaid principal and any accrued and unpaid interest owed by Borrower under this Note, provided, however, that a failure to maintain such records shall not prejudice Lender's rights hereunder or under the Financing Agreement. This Note has been issued by Borrower in accordance with the terms of the Financing Agreement. The Lender and any holder hereof is entitled to the benefits of the Financing Agreement and the other Financing Documents, and may enforce the agreements of Borrower contained therein, and any holder hereof may exercise the respective remedies provided for thereby or otherwise available in respect thereof, all in accordance with the respective terms thereof. All capitalized terms used in this Note and not otherwise defined herein shall have the same meanings herein as in the Financing Agreement.

       If any one or more of the Events of Default shall exist, the entire unpaid principal amount of this Note and all of the unpaid interest accrued thereon may become or be declared due and payable in the manner and with the effect provided in the Financing Agreement.

       No delay or omission on the part of Lender or any holder hereof in exercising any right hereunder shall operate as a waiver of such right or of any other rights of Lender or such holder, nor shall any delay, omission or waiver on any one occasion be deemed a bar or waiver of the same or any other right on any further occasion.

       Borrower waives presentment, demand, notice, protest and all other demands and notices in connection with the delivery, acceptance, performance, default or enforcement of this Note, and assents to any extension or postponement of the time of payment or any other indulgence, to any substitution, exchange or release of collateral and to the addition or release of any other party or person primarily or secondarily liable.

       **THIS NOTE AND THE OBLIGATIONS OF BORROWER HEREUNDER SHALL FOR ALL PURPOSES BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAW OF THE STATE OF NORTH CAROLINA (EXCLUDING THE LAWS APPLICABLE TO CONFLICTS OR CHOICE OF LAW). BORROWER AGREES THAT ANY SUIT FOR THE ENFORCEMENT OF THIS NOTE MAY BE BROUGHT IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA AND CONSENTS TO THE NONEXCLUSIVE JURISDICTION OF**

**SUCH COURT, AND WAIVES ITS RIGHT TO A JURY TRIAL WITH RESPECT TO ANY ACTION ARISING IN CONNECTION WITH THIS AGREEMENT OR ANY OTHER FINANCING DOCUMENT.**

IN WITNESS WHEREOF, the undersigned has caused this Promissory Note to be signed in its name under seal by its duly authorized officer as of the day and year first above written.

[Insert Name of Debtor]

By_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**DURHAM DIVISION**

| | |
|---|---|
| **IN RE:**<br><br>**UNIVERSITY DIRECTORIES, LLC, et. al.**<br><br>**DEBTORS.** | **CASE NO. 14 – 81184**<br><br>**(Consolidated for Purposes of Administration)**<br>**CHAPTER 11** |
| **CERTIFICATE OF SERVICE** ||

 

 

       I hereby certify that a copy of the foregoing was served by automatic electronic service upon the following by automatic electronic noticing this date:

| | |
|---|---|
| William P. Miller<br>Bankruptcy Administrator<br>PO Box 1828<br>Greensboro, NC 27402 | Lindsey E. Powell<br>Anderson Jones, PLLC<br>Obo UDX, LLC<br>P O Box 20248<br>Raleigh, NC 27619 |
| Aaron Z. Tobin/J. Seth Moore<br>Anderson Tobin, PLLC<br>Obo UDX, LLC<br>One Galleria Tower<br>13355 Noel Road, Suite 1900<br>Dallas, TX 75240 | William C. Smith, Jr.<br>Manning Fulton & Skinner, PA<br>Obo Edward S. Holmes<br>P O Box 20389<br>Raleigh, NC 20389 |
| Lauren A. Golden/George Sanderson III<br>Ellis & Winters, LLP<br>Obo Bank of North Carolina<br>P O Box 35054<br>Raleigh, NC 27615 | John H. Capitano<br>Horack Talley Pharr & Lowndes, PA<br>Obo Madison University Mall, LLC<br>301 S. College Street<br>Charlotte, NC 28202-6038 |
| Terri L. Gardner<br>Nelson Mullins Riley & Scarborough, LLP<br>Counsel for UCC<br>P O Box 30519<br>Raleigh, NC 27622 | Gay D. Pelzer, General Counsel<br>The University of Iowa<br>120 Jessup Hall<br>Iowa City, IA 52242-1316 |

and I have served a copy thereof by U.S. Postal Service regular mail, first class to the following parties on this date:

| | |
|---|---|
| Ripon Printers<br>Attn:  Andy Lyke<br>656 S. Douglas Street<br>Ripon, WI  54971 | |
| Action Printing<br>Attn:  Darwin Bethke<br>N6637 Rolling Meadows Drive<br>P O Box 1955<br>Fond du Lac, WI  54936 | United Graphics, Inc.<br>Attn:  John Wurtsbaugh<br>2916 Marshall Avenue<br>Mattoon, IL  61938 |

RESPECTFULLY submitted on behalf of the Debtor, this the 5th day of December, 2014.

/s/ Vicki L. Parrott

**Counsel for the Debtor:**
John A. Northen, NCSB #6789
jan@nbfirm.com
Vicki L. Parrott, NCSB #25449
vlp@nbfirm.com
John Paul H. Cournoyer, NCSB #42224
jpc@nbfirm.com
Northen Blue, LLP
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone:  919-968-4441