**SO ORDERED.**

**SIGNED this 12th day of January, 2015.**


UNITED STATES BANKRUPTCY JUDGE



**UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION**

| IN RE:<br><br>**UNIVERSITY DIRECTORIES, LLC,** *et al.,*<br><br>DEBTORS. | **CASE NO. 14 - 81184<br>(CONSOLIDATED FOR PURPOSES OF ADMINISTRATION)**<br><br>**CHAPTER 11** |
|---|---|
| **First Interim Order Authorizing Intercompany Post-Petition Financing** ||

      This matter came before the Count on January 5, 2015 to consider the "Joint Motion To Authorize Intercompany Post-Petition Financing" (the "Motion") filed by University Directories, LLC ("UD"), Print Shop Management, LLC ("Print Shop"), Vilcom, LLC ("Vilcom"), Vilcom Interactive Media, LLC ("VIM"), Vilcom Properties, LLC ("VP") and Vilcom Real Estate Development (VRD), LLC ("VRD" and collectively, the "Debtors") pursuant to § 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

      Objections or Responses to the Motion (the "Objections") were filed by UDX, LLC ("UDX"), the official committee of unsecured creditors (the "Committee"), and the Bankruptcy Administrator (the "BA"). After considering the matters set forth in the Motion, the Objections, the evidence presented, the record in this case, and the comments of parties wishing to be heard, the Court makes the following findings, conclusions and Orders:

      1.      On October 24, 2014 (the "Petition Date"), the Debtors filed voluntary petitions seeking relief under Chapter 11 of the Bankruptcy Code. Subsequent to the filings, an Order for

relief was entered in each proceeding and the cases were consolidated for purposes of administration only. The Debtors continue in possession of their respective assets and operate their respective businesses as debtors-in-possession. An official committee of unsecured creditors has been duly appointed.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, and this matter is a core proceeding under 28 U.S.C. §157(b)(2). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

3. The nature of the property owned by the Debtors and the secured debt of UDX, LLC ("UDX"), the Debtors' primary secured creditor, is more specifically outlined in the Joint Motion for Authority to Use Cash Collateral (Dkt. No. 8, the "Cash Collateral Motion") filed on October 24, 2014 and the interim Orders entered with respect thereto, and summarized below to the extent relevant to the Motion.

4. As of the Petition Date, VRD owned residential real properties located at (i) 740 Gimghoul Road, Chapel Hill, North Carolina (the "Gimghoul Property") and (ii) 15 Seaside Sparrow Road, Hilton Head, South Carolina (the "Hilton Head Property"). VRD and/or James Heavner executed certain documents (the "VRD Loan Documents") in favor of Harrington Bank, FSB ("Harrington Bank"). The VRD Loan Documents were assigned to Southland National Insurance Corporation, and further assigned by Southland National Insurance Corporation to UDX..

5. In connection with its business operations, UD executed certain documents (the "UD Loan Documents") in favor of Harrington Bank., The UD Loan Documents were assigned to UDX. UDX asserts that it is owed approximately $2,138,930.01 as of October 23, 2014, secured by substantially all assets of UD, including inventory, equipment, accounts, and general intangibles..

 a. Print Shop executed certain documents to secure the present and future indebtedness of UD to Harrington Bank, pursuant to which such indebtedness is secured by substantially all assets of the Print Shop, including inventory, equipment, accounts and general intangibles (the "Print Shop Loan Documents"). The Print Shop Loan Documents were assigned to UDX.

 b. Vilcom executed certain documents to secure the present and future indebtedness of UD to Harrington Bank, pursuant to which such indebtedness is secured by a

blanket lien upon the inventory, equipment, accounts and general intangibles of Vilcom (the "Vilcom Loan Documents"). The Vilcom Loan Documents were assigned to UDX.

c. UDX contends that VIM executed certain documents to secure and guaranty the present and future indebtedness of UD to Harrington Bank, and that such indebtedness is secured by a blanket lien upon the inventory, equipment, accounts and general intangibles of VIM (the "VIM Loan Documents"). The VIM Loan Documents were assigned to UDX.

6. All of the VRD Loan Documents and the UD Loan Documents have been assigned to and are presently held by UDX. No proof of claim has been filed by UDX. On October 23, 2014 UDX provided a payoff statement of all the loans held by UDX, summarized as follows:

| VRD Note | $3,388,162.88 |
| UD Note 19653 | $183,576.32 |
| UD Note 31250 | $888,948.57 |
| UD Note24730 | $235,193.47 |
| UD Note16691 | $573,711.64 |
| Legal Fees | $50,000.00 |
| Other Fees & Charges | $207,500.00 |
| Total | $5,527,092.89 |

7. As set forth in the adversary proceeding filed by the Debtors against UDX and other third parties on December 5, 2014 (Adv. Proc. No. 14-09062), the Debtors maintain that the obligations held by UDX and evidenced by the UD Loans and the VRD Loan are the subject of bona fide dispute, and the Debtors have reserved for themselves, the Committee, and any trustee subsequently appointed in any of these Chapter 11 proceedings or in any subsequent Chapter 7 proceeding, any and all rights to challenge, avoid, object to, set aside or subordinate any claims, liens, security interests or rights of setoff against the Debtors' property, or the rents, profits and income generated therefrom..

8. The closing on the sale of the Hilton Head Property occurred on November 26, 2014, with net proceeds of approximately $810,264 remaining after payment of liens held by

Wells Fargo Bank. The closing on the sale of the Gimghoul Property occurred on December 30, 2014, with net proceeds of approximately $4,421,097. All of the net sale proceeds, $5,231,361 in the aggregate, are held in escrow, subject to the transferred liens of UDX, pending further orders of this Court.

9. The Debtors testified that the aggregate value of the cash collateral on deposit and outstanding accounts receivable which UDX contends secure its loans as of December 31, 2014 is approximately as follows:

   a.   $372,298      Funds on deposit in the DIP Accounts (UD, Print Shop & VIM)
   b.   $2,068,643    Accounts receivable, net of doubtful accounts (UD)
   c.   $191,953      Accounts receivable, net of doubtful accounts (VIM)

10. Although the cases have not been substantively consolidated, the net sale proceeds of the Hilton Head Property, the net sale proceeds of the Gimghoul Property, funds on deposit in the DIP Accounts, the accounts receivable of UD and the accounts receivable of VIM (collectively, the "UDX Collateral") thus had an aggregate known value as of December 31, 2014 of approximately $7,864,255. In addition, UDX has a lien upon certain equipment of UD and inventory of Print Shop with an undetermined value, and allegedly upon the intangible assets of VIM.

11. UD has entered into an Asset Purchase Agreement for the sale of substantially all its tangible and intangible assets as a going concern with a sale price of $4,000,000, subject to Court approval and certain adjustments to the purchase price at closing. The assets to be sold would include the accounts receivable and equipment of UD, but would not include funds on deposit in the debtor-in-possession accounts or held in escrow, or the assets of any of the other Debtors.

12. The Debtors have separately filed the Cash Collateral Motion wherein the Debtors seek authority to use the operating income from the Debtors' businesses to operate, maintain, preserve and protect all the assets of the Debtors, including those which are subject to the security interests asserted by UDX, and the Court has entered interim Orders authorizing the use of cash collateral as provided therein.

13. The Debtors' projections indicate that UD and VilCom (and to a lesser degree, VIM and Print Shop) may need to borrow approximately $300,000 during February and March, 2015 in order to timely pay the on-going costs of operating, preserving, and protecting the

business and property of their respective estates, and costs of administration (including professional fees and court fees). The post-petition financing is thus necessary to preserve the going-concern value of these businesses for the benefit of creditors and the respective estates.

14. VRD seeks authority pursuant to Section 363 to use a portion of such funds to provide post-petition financing to UD, VilCom, VIM and Print Shop, so that the value of the on-going businesses can be preserved.

15. The Debtors are unable to obtain unsecured credit allowable under Section 503(b)(1) as an administrative expense, and seek authority pursuant to Section 364 to obtain post-petition financing from VRD which is not secured by a lien upon any assets but will be entitled to super-priority administrative expense status, in accordance with the Post-petition Financing Agreement attached to the Motion and the Cash Collateral Budget approved by the Court from time to time hereafter.

Based on the foregoing findings, the Court concludes that an order granting interim relief followed by a hearing at a future date (which may be a final hearing) would not prejudice the rights of creditors in these proceedings, and the use of such funds is necessary to continue operations without interruption and preserve the value of the estates for creditors.

NOW, THEREFORE, it is hereby ORDERED as follows:

1. The Objections are denied on an interim basis, without prejudice to them being asserted at any subsequent or final hearing on the Motion, and the Motion is granted on an interim basis and for the period through and including March 2, 2015 (the "Interim Period").

2. During the Interim Period, VRD is authorized to provide post-petition financing to the other Debtors in an aggregate amount up to but not exceeding $300,000, as may be required to meet the funding needs as set forth herein, provided that the UDX Collateral has and maintains at all times an aggregate value which is not less than one hundred twenty percent (120%) of the claims asserted by UDX in its October 23, 2014 payoff statement to Debtors, less any adequate protection payments or other increases or decreases in the aggregate claim amount on an interim basis as approved by the Court, pending a final determination of such claims.

3. The value of the UDX Collateral for purposes of determining compliance with the 120% collateralization formula[1] would be calculated as follows:

---

[1] Valuation of the Print Shop inventory, UD and VIM equipment and the UD and VIM intangible assets shall be deferred for purposes of this interim order.

a. 100% of funds on deposit in the debtor-in-possession accounts.

b. 100% of funds held in escrow and derived from the sale of the Gimghoul Property and the Hilton Head Property.

c. 80% of the value of the accounts receivable, after allowance for doubtful accounts.

4. VRD is authorized to advance funds to UD, VilCom, VIM and Print Shop (each a "Borrower") as needed to meet the obligations described below, and absent an Event of Default no interest shall be charged on the amounts advanced. The Borrowers shall not repay any amounts advanced by VRD absent further order of this Court after notice and hearing.

5. All principal (and any default interest) owed by a Borrower shall be due and payable to VRD in full upon the earliest of (a) the date of closing of a sale of all or substantially all of the assets of the Borrower, (b) unless otherwise approved by the Court, thirty (30) days after the Effective Date of any Plan of Reorganization confirmed by the Court, and (c) the dismissal or conversion to Chapter 7 of the Borrower's case.

6. The financing shall be used to fund the Borrower's operating expenses, costs of administration (including professional fees of the Debtors and the Committee, and the quarterly fees payable to the Court), capital expenditures, and other expenses to the extent such expenditures are authorized by this Court's Fourth Interim Order Granting Joint Motion For Authority To Use Cash Collateral and the budget attached thereto or otherwise and cannot be paid from cash collateral.

7. The financing will not be secured by a lien on any assets of any of the Borrowers. VRD will have a super-priority administrative expense claim pursuant to § 364(c)(1) in each Borrower's case equal to the outstanding amount of the funds advanced to such Borrower.

8. UDX, counsel for the Creditors' Committee, and the Bankruptcy Administrator shall be provided financial reports from VRD in form and frequency reasonably acceptable to these parties, including but not limited to a bi-weekly report of all funds advanced pursuant to this Order, indicating the date of each advance, the Borrower, and the purpose for each advance, and due by 5:00 pm EST on Thursday of the week following such bi-weekly period.

9. The terms of this Interim Order shall be binding upon any official committee and any trustee subsequently appointed, including but not limited to a Chapter 7 trustee upon

conversion of any of these Chapter 11 cases to a case under Chapter 7 of the Bankruptcy Code, and the terms of this Interim Order shall survive dismissal of any of these cases.

10. Notwithstanding the foregoing, the findings, conclusions, or orders set forth herein are made on an interim basis, shall not constitute a final decision on any legal or factual issue, and are without prejudice to the right of any party to raise, contest, or seek the same or different outcome at any subsequent hearing; <u>provided however</u>, that based on the findings set forth in this Interim Order and the reliance of VRD in good faith on the terms thereof:

    a. If any of the provisions of this Interim Order are hereafter modified, vacated or stayed by an order of this Court or another court, such stay, modification or vacation shall not affect the validity and enforceability of the super-priority administrative expense claim authorized for the benefit of VRD that is granted pursuant to the terms of this Interim Order.

    b. Any financing advanced by VRD to a Borrower pursuant to this Interim Order prior to the effective date of such modification, stay or vacation shall be governed in all respects by the original provisions of this Interim Order.

    c. Upon the entry and effect of any stay, modification of vacation of this Interim Order, the Borrower's ability to obtain post-petition financing hereunder shall be deemed immediately terminated without further order of the Court.

11. A further hearing (which may be a final hearing) on this Motion will be held at 10:00 o'clock a.m. on March 2, 2015, in the Courtroom, U.S. Bankruptcy Court, 302 East Pettigrew Street, Durham, NC 27701, at which time the Court will further consider the Motion.

[END OF DOCUMENT]

Service by automatic electronic noticing:

| William P. Miller<br>Bankruptcy Administrator<br>PO Box 1828<br>Greensboro, NC 27402 | Lindsey E. Powell<br>Anderson Jones, PLLC<br>Obo UDX, LLC<br>P O Box 20248<br>Raleigh, NC  27619 |
|---|---|
| Aaron Z. Tobin & J. Seth Moore<br>Anderson Tobin, PLLC<br>Obo UDX, LLC<br>One Galleria Tower<br>13355 Noel Road, Suite 1900<br>Dallas, TX  75240 | William C. Smith, Jr.<br>Manning Fulton & Skinner, PA<br>Obo Edward S. Holmes<br>P O Box 20389<br>Raleigh, NC  20389 |
| Lauren A. Golden & George Sanderson III<br>Ellis & Winters, LLP<br>Obo Bank of North Carolina<br>P O Box 35054<br>Raleigh, NC  27615 | John H. Capitano<br>Horack Talley Pharr & Lowndes, PA<br>Obo Madison University Mall, LLC<br>301 S. College Street<br>Charlotte, NC  28202-6038 |
| Terri L. Gardner<br>Nelson Mullins Riley & Scarborough, LLP<br>Counsel for UCC<br>P O Box 30519<br>Raleigh, NC  27622 | Gay D. Pelzer, Deputy General Counsel<br>The University of Iowa<br>120 Jessup Hall<br>Iowa City, IA 52242-1316 |
| Richard M. Hutson II<br>Counsel for James A. Heavner<br>P O Drawer 2252-A<br>Durham, NC  27702 | John A. Northen & Vicki L. Parrott<br>Northen Blue, LLP<br>PO Box 2208<br>Chapel Hill, NC 27515 |