UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | |
|---|---|
| IN RE:<br><br>UNIVERSITY DIRECTORIES, LLC, *et al.*,<br><br>DEBTORS. | CASE NO. 14 - 81184<br>(CONSOLIDATED FOR PURPOSES OF ADMINISTRATION)<br>CHAPTER 11 |
| **Motion To (A) Approve Sale Of Certain Assets, And (B) Transfer Any And All Claims, Liens, Encumbrances And Interests In Sale Assets To Proceeds Of Sale** ||

NOW COME University Directories, LLC ("UD"), Print Shop Management, LLC ("Print Shop"), Vilcom, LLC ("Vilcom"), Vilcom Interactive Media, LLC ("VIM"), Vilcom Properties, LLC ("VP") and Vilcom Real Estate Development (VRD), LLC ("VRD," and collectively, the "Debtors"), and move the Court pursuant to § 363 of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure as follows:

1. On October 24, 2014 (the "Petition Date"), the Debtors filed voluntary petitions seeking relief under Chapter 11 of the Bankruptcy Code. Subsequent to the filings, an Order for relief was entered in each proceeding and the cases were consolidated for purposes of administration only. The Debtors continue in possession of their respective assets and operate their respective businesses as debtors-in-possession. An official committee of unsecured creditors (the "Committee") has been duly appointed in the case of University Directories, LLC.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, and this matter is a core proceeding under 28 U.S.C. §157(b)(2). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

3. UD is a collegiate marketing and media company located in Chapel Hill, North Carolina and doing business as The AroundCampus Group.

4. In this motion (the "Sale Motion"), the Debtors seek entry of an Order (i) authorizing the sale, transfer and conveyance of substantially all the assets of UD, and (ii) transferring all claims, liens, encumbrances and interests from the Sale Assets to the proceeds

thereof so that the Debtor may transfer and convey the Sale Assets free and clear of all claims, liens encumbrances and interests to AC Acquisition, LLC or its designee.

5. UD entered into an Asset Purchase Agreement for the sale of substantially all its tangible and intangible assets as a going concern to AC Acquisition, LLC or its designee (the "Purchaser"), subject to Court approval. The Committee is not prepared to support the sale under the current terms, but discussions are continuing between and among the Debtors, the Committee and the Purchaser.

**Asset Sale**

6. While certain aspects of the APA are subject to further adjustment and negotiations, the material terms can be summarized as follows:

   a. The assets to be sold (the "Sale Assets") would include all UD's accounts receivable, inventory, supplies, equipment and other tangible or intangible assets, except as otherwise specifically excluded.

   b. Excluded from the Sale Assets (the "Excluded Assets") are all UD's funds on deposit in the debtor-in-possession accounts or held in escrow, corporate records, accounts receivable due to UD from other debtors, affiliates or insiders, causes of action (including causes of action which may be brought pursuant to Chapter 5 of the Bankruptcy Code), and any assets used in the business but not owned or leased by UD.

   c. The sale is conditional upon (i) assumption and assignment of certain executory leases or contracts, and (ii) reinstatement of certain contracts which have lapsed or expired. The Debtors have filed a separate motion (the "Contracts Motion") seeking authority to assume and assign, or to reinstate, as applicable, some or all of the leases and contracts listed therein.

       i. At or before the hearing on the Sale Motion, the Purchaser shall designate those leases and contracts to be assigned to the Purchaser at and as a requirement of closing, subject to the agreement of the Debtors and approval by the Court.

       ii. The amount of any payment necessary to assume and assign an executory lease or contract to the Purchaser, or to reinstate a lapsed or expired contract, shall be as negotiated between the Debtors and the respective

contract party or determined by the Court (in each case, a "Cure Payment").

    iii.    With respect to executory leases or contracts, the Cure Payments shall be paid by the Debtors at closing from the sale proceeds, and the Purchaser shall provide adequate assurance of future performance.

    iv.    With respect to lapsed or expired contracts to be reinstated, the Cure Payments shall be paid by the Purchaser, and the Purchaser shall credit such Cure Payments against the installments first coming due under the promissory note.

d.    The purchase price is $4,000,000, subject to certain adjustments as summarized below. The Purchaser has provided an earnest money deposit of $40,000, will execute a promissory note in the principal amount of $2,000,000, and will pay the balance of the purchase price in cash at closing.

e.    The purchase price and the cash due at closing will be reduced by the "Accounts Receivable Adjustment," which is the amount by which the gross value of the Accounts Receivable at closing is less than the gross value of the Accounts Receivable as of December 8, 2014 ($4,491,175.48).[1]

f.    The promissory note will bear interest at the rate of 3.5% per annum, payable in quarterly installments based on 25% of "Cash Flow From Operations" (as defined therein) as measured on a quarterly basis, and with all outstanding principal and interest due and payable in full on or before the date which is five years after the closing; <u>provided however</u>, any Cure Payments due for lapsed or expired contracts which were reinstated (as discussed above) shall be paid by the Purchaser and applied as a credit against the first instalment(s) coming due under the promissory note.

g.    The existing contract provides that the promissory note would not be secured by any collateral. During the course of negotiations, the Purchaser has offered to secured the promissory note with a second priority lien on present and future

---

[1] By way of example, the gross value as of December 8, 2014, which was the execution date of a letter of intent between the parties, was approximately $4,491,175, and the gross value as of February 18, 2015 was approximately $4,280,949, and if the sale had closed on February 18 the purchase price and the cash due at closing would have reduced by $210,226. The actual adjustment would be determined by the actual gross value of the Accounts Receivable at closing.

accounts receivable; <u>provided however</u>, the Debtor and the Purchaser shall enter into an Intercreditor Agreement which shall provide that the lien securing the promissory note is and shall at all times be subordinate to any other first lien secured financing provided to the Purchaser at any time by a third party which is not an owner or affiliate of the Purchaser.

h. Except for the obligations specifically assumed by the Purchaser with respect to the leases or contracts assigned at closing, the Purchaser will not assume or be liable for any debts or other obligations of UD or the other Debtors with respect to the Sale Assets or the business operations.

i. While the parties expect that many of the existing employees will be employed by the Purchaser after the closing, the Purchaser is not obligated to employ any of the Debtors' existing officers or employees and no employment contracts have been negotiated to date.

**Transfer of Liens**

7. In connection with its business operations, UD executed certain documents (the "UD Loan Documents") in favor of Harrington Bank, secured by substantially all assets of UD, including inventory, equipment, accounts, and general intangibles, as well as by other collateral or the proceeds thereof. The UD Loan Documents were assigned to UDX, LLC ("UDX").

8. As set forth in the adversary proceeding filed by the Debtors against UDX and other third parties on December 5, 2014 (Adv. Proc. No. 14-09062), the Debtors maintain that the obligations held by UDX and evidenced by the UD Loans are subject to offset, reduction or subordination, and thus claims and liens held by UDX are the subject of bona fide dispute.

9. To the best information, knowledge and belief of the Debtors, there are no other liens upon or security interests in the Sale Assets.[2]

**Basis for Approval of Sale**

10. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."

---

[2] There are certain equipment leases, as more particularly discussed in the Contracts Motion, which may be designated by the Purchaser as executory contracts to be assumed and assigned to the Purchaser in conjunction with the closing. These equipment leases contain a $1.00 purchase option and could be deemed conditional sale agreements treated as secured claims.

11. Section 363(f) of the Bankruptcy Code provides authority for this Court to provide approval of the sale free and clear of all liens, claims, interests and encumbrances transferred to proceeds of sale.

12. Although UD is operating post-petition as a debtor-in-possession, the Debtors are dependent upon the use of cash collateral to fund their operating needs and UDX objects to the use of its cash collateral in this manner. Without assurance that such use of cash collateral can continue, the Debtors are hampered in their ability to obtain new commitments for the 2015 production of planners and directories, and the advertising which supports the business operations.

13. The Debtors believe that the value of UD's assets will be maximized through the contemplated sale.

   a. The purchase price is fair, reasonable, and in the best interest of the estate.
   b. Creditors would benefit from the sale of the UD business as a going concern to a third party, who would then be in position to infuse working capital, make the necessary capital expenditures, and maintain operations for existing and prospective customers, vendors and employees.
   c. The value of the Sale Assets is best realized by the proposed sale, as a substantial portion of the purchase price is attributable to the going concern value of the business, and a liquidation sale would provide little if anything for unsecured creditors.
   d. To the extent existing contracts are assigned to the Purchaser, the estate will be protected against potential contract rejection claims.

14. The Debtors request that upon completion of the hearing to consider the Sale Motion, the Court enter an Order (the "Sale Approval Order"), effective immediately, to (i) approve the sale and authorize the transfer or conveyance of the Sale Assets to the Purchaser, and (ii) transfer any and all claims, liens, encumbrances or interests in or upon the Sale Assets to the proceeds of sale.

15. The Debtors further request that the Court consider and enter an Order (the "Contracts Approval Order"), contemporaneously with the Sale Approval Order and effective immediately, granting the relief requested in the Contracts Motion.

WHEREFORE, the Debtors pray the Court for entry of the Sale Approval Order granting the relief requested in this Sale Motion, and:

1. Finding that the purchase price for the Sale Assets is fair, reasonable and sufficient.

2. Finding that the Purchaser is a "good faith purchaser" pursuant to Section 363(m) of the Bankruptcy Code, and that none of the grounds set forth in Section 363(n) exist with respect to a sale to the Purchaser.

3. Finding that one or more of the grounds for a sale free and clear pursuant to Section 363(f) of the Bankruptcy Code has been met as to each claim, lien, encumbrance or interest in any or all of the Sale Assets.

4. Authorizing the sale of the Sale Assets to the Purchaser, free and clear of any and all claims, liens, encumbrances and interests.

5. Transferring any and all claims, liens, encumbrances and interests in or upon the Sale Assets to the proceeds of the sale.

6. Providing that the Sale Approval Order in all respects shall be effective immediately.

Respectfully submitted, March 5, 2015.

/s/ John A. Northen

**Counsel for the Debtors:**
Northen Blue, LLP
John A. Northen, NCSB #6789
jan@nbfirm.com
Vicki L. Parrott, NCSB #25449
vlp@nbfirm.com
John Paul H. Cournoyer, NCSB #42224
jpc@nbfirm.com
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone: 919-968-4441
Fax: 919-942-6603